Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/27/2023 09:04 AM CST

**State of Nebraska, appellee, v.
Marlon E. Miranda, Jr., appellant.**

___ N.W.2d ___

Filed January 27, 2023.    No. S-22-196.

1. **Convictions: Appeal and Error.** In an appeal of a criminal conviction, an appellate court reviews the evidence in a light most favorable to the prosecution.
2. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
3. **Homicide: Intent: Circumstantial Evidence: Proof.** Purposeful, deliberate, premeditated murder may be proved circumstantially.
4. **Homicide: Intent: Words and Phrases.** In the homicide context, deliberate means not suddenly, not rashly, and requires that the defendant considered the probable consequences of his or her act before doing the act.
5. ____: ____: ____. The term "premeditated" means to have formed a design to commit an act before it was done.
6. **Homicide: Intent.** One kills with premeditated malice if, before the act causing death occurs, one has formed the intent or determined to kill the victim without legal justification.
7. **Homicide: Intent: Time.** No particular length of time for premeditation is required, provided the intent to kill is formed before the act is committed and not simultaneously with the act that caused the death.

8. ____: ____: ____. The design or purpose to kill may be formed upon premeditation and deliberation at any moment before the homicide is committed.

9. **Criminal Law: Evidence: Intent.** The intent with which an act is committed is a mental process and may be inferred from the words and acts of the defendant and from the circumstances surrounding the incident.

10. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law.

11. ____: ____. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

12. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court.

13. **Effectiveness of Counsel: Proof: Appeal and Error.** When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel.

14. **Effectiveness of Counsel: Records: Appeal and Error.** Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.

15. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.

16. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

17. \_\_\_\_: \_\_\_\_. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. To show prejudice under the prejudice component of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different.

18. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal; the determining factor is whether the record is sufficient to adequately review the question.

19. **Effectiveness of Counsel: Records: Proof: Appeal and Error.** The record is sufficient to resolve on direct appeal a claim of ineffective assistance of counsel if the record affirmatively proves or rebuts either deficiency or prejudice with respect to the defendant's claims.

20. \_\_\_\_: \_\_\_\_: \_\_\_\_: \_\_\_\_. An appellate court can determine whether the record proves or rebuts the merits of a claim of ineffective assistance of trial counsel only if it has knowledge of the specific conduct alleged to constitute deficient performance.

21. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

22. **Effectiveness of Counsel: Appeal and Error.** Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity.

Appeal from the District Court for Douglas County: DUANE C. DOUGHERTY, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Kyle M. Melia for appellant.

Douglas J. Peterson, Attorney General, Siobhan E. Duffy, and Erin E. Tangeman for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## I. INTRODUCTION

In this direct appeal, Marlon E. Miranda, Jr. (Miranda), challenges his convictions, pursuant to jury verdict, for first degree murder and use of a deadly weapon to commit a felony. He contends that the evidence was insufficient to support his convictions and that he received ineffective assistance of trial counsel. Finding no merit to his appeal, we affirm.

## II. BACKGROUND

We begin by setting forth a brief background. Miranda and his wife, Sharon Miranda, separated in 2019. Sharon later met and began dating Jose Santos Parra-Juarez, the victim. The convictions flowed from a shooting that occurred early in the morning on June 13, 2020, which we will discuss in more detail later in the opinion.

The State charged Miranda with first degree murder, a Class IA felony,[1] and use of a deadly weapon (firearm) to commit a felony, a Class IC felony.[2] Miranda pled not guilty. A jury later convicted him on both counts. The court sentenced Miranda to life imprisonment on the murder conviction and to 45 to 50 years' imprisonment on the weapon conviction, to be served consecutively.

Miranda filed a timely appeal. Because of the imposition of life imprisonment, the appeal was placed on our docket.[3]

---

[1] See Neb. Rev. Stat. § 28-303(1) (Cum. Supp. 2022).

[2] See Neb. Rev. Stat. § 28-1205(1)(a) and (c) (Reissue 2016).

[3] See Neb. Rev. Stat. § 24-1106(1) (Cum. Supp. 2022).

## III. ASSIGNMENTS OF ERROR

Miranda assigns six errors. His first two assignments of error relate to the sufficiency of the evidence. He assigns that the evidence presented at trial lacks the probative value to sustain a guilty verdict because, he asserts, no rational trier of fact could find him guilty of first degree murder or use of a deadly weapon to commit a felony.

The remaining assignments of error relate to ineffective assistance of counsel. Miranda assigns, reordered, that his trial counsel performed deficiently in (1) "failing to meaningfully participate in voir dire," (2) "failing to adequately prepare for a first degree murder trial by failing to review discovery with [him] and failing to file pretrial motions," (3) "never [seeking] out plea negotiations with the State," and (4) "failing to zealously advocate for [him]." He asserts that but for his trial counsel's deficient performance, the result of the proceeding below would have been different.

## IV. STANDARD OF REVIEW

[1] In an appeal of a criminal conviction, an appellate court reviews the evidence in a light most favorable to the prosecution.[4] Additional standards of review will be set forth, as appropriate, in the analysis.

## V. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

Miranda first contends that the evidence presented at trial was insufficient to support his convictions.

### (a) Standard of Review

[2] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence,

---

[4] *State v. Anders*, 311 Neb. 958, 977 N.W.2d 234 (2022).

pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[5]

### (b) First Degree Murder

On appeal, Miranda argues that the State's evidence was insufficient to show he committed first degree murder. Under Nebraska law, a person commits first degree murder when he or she kills another person "purposely and with deliberate and premeditated malice."[6] Miranda is not disputing that he killed Parra-Juarez. Instead, he challenges the sufficiency of the evidence based on his claim that "[t]he State did not introduce any direct evidence of [his] state of mind" at the time of the killing.[7] The State asserts that it presented circumstantial evidence to prove he killed Parra-Juarez purposely and with deliberate and premeditated malice, and contends that it met its burden of proving each element beyond a reasonable doubt. We agree.

### (i) Elements

[3-6] Before addressing Miranda's specific arguments, we begin by elaborating on the elements of first degree murder at issue. Purposeful, deliberate, premeditated murder may be proved circumstantially.[8] In the homicide context, deliberate means not suddenly, not rashly, and requires that the defendant considered the probable consequences of his or her act before doing the act.[9] The term "premeditated" means to

---

[5] *State v. Miller*, 312 Neb. 17, 978 N.W.2d 19 (2022).

[6] § 28-303(1).

[7] Brief for appellant at 15.

[8] *State v. Golyar*, 301 Neb. 488, 919 N.W.2d 133 (2018).

[9] *Id.*

have formed a design to commit an act before it was done.[10] One kills with premeditated malice if, before the act causing death occurs, one has formed the intent or determined to kill the victim without legal justification.[11]

[7-9] No particular length of time for premeditation is required, provided the intent to kill is formed before the act is committed and not simultaneously with the act that caused the death.[12] The design or purpose to kill may be formed upon premeditation and deliberation at any moment before the homicide is committed.[13] The intent with which an act is committed is a mental process and may be inferred from the words and acts of the defendant and from the circumstances surrounding the incident.[14]

### (ii) Additional Facts

Pursuant to our standard of review, we recite these facts in the light most favorable to the State. On the evening of June 12, 2020, Miranda went to Epoca Cantina, a bar in Omaha, Nebraska (the bar), to celebrate his friend's birthday. Sharon arrived separately with a group of friends. At that time, Miranda and Sharon had been separated for more than a year, and Miranda was aware that Sharon was dating Parra-Juarez.

Below is an aerial photograph, which is a cropped excerpt from exhibit 339, used by the State as demonstrative evidence. We refer to it in this section only for illustrative purposes. Although it is difficult to read, the bar's name appears in yellow immediately above the yellow "x."

---

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*



Shortly after Sharon arrived at the bar (entrance marked by the yellow "x") with her group of friends, they met up with Parra-Juarez. Miranda abruptly approached the group and seemed upset. He "waved off" Parra-Juarez and said something to him. The group then left Miranda and found a table in the back of the bar. Later that evening, Sharon got up from the table to go to the restroom, and Miranda walked across the bar and approached Parra-Juarez. He grabbed Parra-Juarez' face, twisted his neck, and pushed him to the ground. Parra-Juarez did not fight back. The bar owner escorted Miranda out of the bar.

The bar owner went back inside the bar and grabbed a towel for Parra-Juarez, whose face was bleeding. He then asked Parra-Juarez where he and his friends were staying for the night and pointed out where their hotel was located. The

bar owner stated that he would let Sharon, Parra-Juarez, and the rest of their group out through the back door of the bar (on the north side of the bar building depicted in the photograph), in the hope that they would not cross paths with Miranda—whom he had escorted out of the front door—on their way to the hotel.

After Sharon's group left the bar, Miranda tried to get back inside to grab his coat and his hat. The bar owner retrieved the items for him. Miranda then walked to his car (represented on the photograph by a red rectangle), which was parked on Capitol Avenue, and retrieved his gun. (This path is marked on the photograph by a red arrow.) The gun was in a holster, which he clipped to his pants pocket beneath his shirt. After retrieving his gun, Miranda walked back to the bar. (This path is marked on the photograph by the blue arrow.) His friend came outside to talk with him and told him that Sharon's group had exited through the back door. Miranda left and walked toward North 12th Street. (This path is marked on the photograph by the purple arrow from the bar entrance to North 12th Street.) When he reached the street, he turned right on the sidewalk and walked north, in the opposite direction from where his car was parked. (This path is marked by the remainder of the purple arrow.)

Sharon, Parra-Juarez, and the rest of their group were walking north on the sidewalk on North 12th Street. Miranda quickly approached the group from behind with his hand under his shirt, in his waistband. Someone screamed that Miranda had a gun. He then pulled the gun out and began pointing it at Sharon and Parra-Juarez, who were walking together at the back of the group. When Miranda caught up to them, he reached over Sharon and shot Parra-Juarez, who fell to the ground. While Parra-Juarez was lying on the ground, Miranda shot him multiple times in the torso and neck—shooting him a total of six times—and then grabbed Sharon by the arm and pushed her further up the sidewalk.

An off-duty police officer was working security in the area and heard the gunshots. He ran in the direction of the gunfire and observed Parra-Juarez lying on the ground at North 12th Street. He ran past Parra-Juarez toward Miranda, who was pointing a gun at Sharon and banging her head against the wall. The officer drew his handgun and identified himself as a police officer. Miranda did not drop the gun. The officer fired nine times in Miranda's direction, striking him once above the knee and on the surface of his ankle. Miranda fell backward and was eventually detained. When asked to describe the events that occurred, Miranda stated that Parra-Juarez "got up on his wife or got too close to his wife, so he got shot."

Parra-Juarez was taken to a hospital and later pronounced dead. The fragments recovered during an autopsy revealed that Miranda had shot him using an "RIP, Radically Invasive Projectile style bullet," which has eight points that detach from the body of the bullet to create nine separate wound channels instead of one. The autopsy confirmed that Parra-Juarez' death was caused by the gunshot wounds to his torso and neck. Although Miranda did not deny that he shot Parra-Juarez, he maintained that the shooting "was all a blur" and that he did not plan Parra-Juarez' death in any way.

### (iii) Resolution

Miranda argues that although "'[c]ircumstantial evidence is not inherently less probative than direct evidence,' and 'a fact finder may rely upon circumstantial evidence and the inferences that may be drawn therefrom,'" in this case, circumstantial evidence was insufficient to find him guilty.[15] Miranda asserts that his own testimony was "[t]he only evidence of his state of mind" at the time of the killing and that "[h]e reasonably believed that his life was in danger" when he

---

[15] Brief for appellant at 14 (quoting *State v. Kofoed*, 283 Neb. 767, 817 N.W.2d 225 (2012)).

shot Parra-Juarez.[16] Thus, he contends, the evidence was insufficient to support his conviction for first degree murder. We disagree for three reasons.

First, the State was not required to present direct evidence. As outlined above, purposeful, deliberate, premeditated murder may be proved circumstantially.[17] Even if we assume that Miranda's own testimony supported an alternative theory regarding his state of mind at the time of the shooting, this court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. The relevant question is only whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

The record reflects that the State presented an abundance of evidence supporting its theory that Miranda committed first degree murder. That evidence included Miranda's gun; photographs and x rays of the bullet fragments recovered from the victim's body during the autopsy; surveillance footage of the area, which showed Miranda walking up the sidewalk on North 12th Street with his arm extended in front of him; and testimony from various police officers, first responders, forensic technicians, and third-party witnesses. Viewing the facts in the light most favorable to the prosecution and without passing on the credibility of the witnesses, we determine there was sufficient evidence for any rational trier of fact to find Miranda guilty beyond a reasonable doubt of first degree murder.

Second, we reject Miranda's suggestion that we should apply what is often referred to as the "accused's rule" in addressing his claim, instead of viewing the evidence in the light most favorable to the State.[18] We explained in *State v.*

---

[16] *Id.* at 15.

[17] *State v. Golyar, supra* note 8.

[18] See *State v. Payne*, 205 Neb. 522, 289 N.W.2d 173 (1980).

*Olbricht*[19] that prior to 1981, when reviewing circumstantial evidence on appeal, we followed the accused's rule. That rule required an appellate court to apply the inference most favorable to the accused when confronted with two inferences deducible from circumstantial evidence.[20] We stated that the accused's rule had the effect of requiring the State "'to disprove every hypothesis of nonguilt in order to convict'" using circumstantial evidence.[21] Here, Miranda asserts that the State's evidence was insufficient to support his conviction for first degree murder, because "[t]he State did not introduce evidence of premeditation inconsistent with any reasonable hypothesis of innocence."[22] But, as the State correctly points out in its briefing, we made clear in *Olbricht* that the accused's rule is no longer the governing standard.[23]

Finally, although Miranda does not assign error to the jury instructions, we briefly note that the district court appropriately instructed the jury regarding circumstantial evidence. It instructed that in deciding whether Miranda acted with intent when he killed Parra-Juarez, the jury "should consider [Miranda's] words and acts and all the surrounding circumstances" and that "[a] fact may be proved by direct evidence alone, by circumstantial evidence alone, or by a combination of the two." The court also instructed that it is the State's burden to prove each element of the crime beyond a reasonable doubt. It further instructed that there were four possible verdicts for the jury to consider, including (1) guilty of first degree murder, (2) guilty of second degree murder, (3) guilty of manslaughter, or (4) not guilty. And it instructed the jury

---

[19] *State v. Olbricht*, 294 Neb. 974, 885 N.W.2d 699 (2016) (citing *State v. Pierce*, 248 Neb. 536, 537 N.W.2d 323 (1995)).

[20] *Id.* (citing *State v. Pierce, supra* note 19).

[21] *Id.* at 986, 885 N.W.2d at 708 (quoting *State v. Pierce, supra* note 19).

[22] Brief for appellant at 17.

[23] See *State v. Olbricht, supra* note 19 (citing *State v. Buchanan*, 210 Neb. 20, 312 N.W.2d 684 (1981) (expressly overruling accused's rule)).

on self-defense. After considering the instructions provided by the court and the evidence presented at trial, the jury found Miranda guilty beyond a reasonable doubt of first degree murder. Viewing the evidence in the light most favorable to the prosecution, we see no reason to set aside that verdict. This claim lacks merit.

### (c) Use of Deadly Weapon to Commit Felony

Miranda derivatively contends that the evidence presented at trial was insufficient to support his conviction for use of a deadly weapon to commit a felony. This claim is premised on his argument that the State failed to prove the elements of first degree murder—the underlying felony for his use of a deadly weapon to commit a felony conviction—beyond a reasonable doubt. We note that Miranda does not dispute that he used a firearm to kill Parra-Juarez or that Parra-Juarez' death was caused by the gunshot wounds that he inflicted.

Because Miranda's premise is flawed, this argument also fails. We have already decided that the State met its burden to prove the elements of first degree murder. Thus, the evidence was sufficient to support Miranda's conviction for use of a deadly weapon to commit a felony. This claim lacks merit.

### 2. Ineffective Assistance of Counsel

Miranda next alleges various claims of ineffective assistance of counsel, asserting that but for his trial counsel's deficient performance, the outcome of the proceeding would have been different.

### (a) Standard of Review

[10,11] Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law.[24] In reviewing claims of ineffective assistance of counsel on direct

---

[24] *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021).

appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.[25]

[12,13] An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court.[26] When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel.[27]

[14] Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.[28]

### (b) General Principles

[15] Before addressing Miranda's specific claims, we set forth the general principles governing ineffective assistance of counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective

---

[25] *State v. Drake*, 311 Neb. 219, 971 N.W.2d 759 (2022).

[26] *State v. Thomas*, 311 Neb. 989, 977 N.W.2d 258 (2022).

[27] *State v. Figures, supra* note 24.

[28] *State v. Thomas, supra* note 26.

performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.[29]

[16,17] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[30] the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[31] To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. To show prejudice under the prejudice component of *Strickland*, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different.[32]

We now turn to Miranda's specific claims.

### (c) Claims Assigned

#### (i) Failure to "Meaningfully" Participate in Voir Dire

Miranda first argues that his trial counsel performed deficiently in failing to meaningfully participate in voir dire. To support his claim, he asserts that his counsel "lectured the jury," instead of asking questions, and that "[o]f the few questions asked, none were substantive."[33] He further asserts that his counsel moved on without waiting for responses from the potential jurors. Miranda characterizes this performance as "the complete abandonment of his [trial counsel's]

---

[29] *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022).

[30] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[31] *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022).

[32] *Id.*

[33] Brief for appellant at 22.

responsibility."[34] In response, the State argues that Miranda fails to specifically detail his allegation or, in the alternative, that the record is insufficient to address the claim.

[18,19] The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal; the determining factor is whether the record is sufficient to adequately review the question.[35] The record is sufficient to resolve on direct appeal a claim of ineffective assistance of counsel if the record affirmatively proves or rebuts either deficiency or prejudice with respect to the defendant's claims.[36]

The record before us reveals that the prosecutor conducted a lengthy and comprehensive voir dire examination. First, the prosecutor asked whether anyone knew individuals who were involved in the case. He then asked about their familiarity with the general location where the killing took place. Next, he asked whether anyone had prior knowledge of the events that led to the case. He also asked questions regarding their previous experience serving as jurors. Then, the prosecutor inquired about potential witnesses. He further asked whether anyone had contact with law enforcement in the past or was a victim of a crime. He next asked questions about the potential jurors' consideration of the particular charges against Miranda and whether anyone had experience with or specific views regarding firearms. He also asked whether anyone had concerns about hearing testimony from people who live differently or have a different background, race, socioeconomic status, or belief from the potential jurors. Finally, the prosecutor inquired about their familiarity with television shows involving crime and their ability to apply the law based only upon the evidence presented inside the courtroom.

---

[34] *Id.* at 23.

[35] *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

[36] *Id.*

[20] An appellate court can determine whether the record proves or rebuts the merits of a claim of ineffective assistance of trial counsel only if it has knowledge of the specific conduct alleged to constitute deficient performance.[37] Although Miranda's trial counsel's voir dire was relatively brief compared to the State's examination, brevity alone is not enough to show that his trial counsel's performance was deficient. In his argument, Miranda points to a single statement that his counsel made during voir dire: "'I quit trying to [find] out exactly what [juries are] thinking.'"[38] He does not identify any specific questions that his trial counsel failed to ask.

In light of the State's extensive voir dire examination and Miranda's trial counsel's statements in the record, we cannot say that the level of engagement amounted to a total failure in his representation. Viewing Miranda's counsel's actions in the context of the theme of burdens on the jury that accompany a lengthy trial, and considering that the holidays were approaching around the time of the trial, we cannot say that Miranda's counsel had an unreasonable strategic purpose in how he addressed the jury or that his performance was deficient. This claim is insufficiently pled.

### (ii) Failure to Prepare for Trial

Miranda also argues that his trial counsel performed deficiently by failing to adequately prepare for trial, because, he asserts, his counsel failed to review discovery with him and failed to file pretrial motions. The State counters that this claim fails on direct appeal, either because Miranda failed to sufficiently describe his allegations or because the record is insufficient to address them.

Upon our review, the record indicates that Miranda met with his trial counsel in preparation for the trial and that he was

---

[37] *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021).

[38] Brief for appellant at 22.

aware of the State's evidence against him. It further reveals that Miranda's trial counsel filed various pretrial motions. His counsel moved, on multiple occasions, to continue the pretrial conference. His counsel also filed a motion to take deposition and a motion in limine, which his counsel later amended.

Miranda broadly argues that his counsel was ineffective in not filing motions to suppress. But, as the State correctly points out, he fails to provide a basis for filing such motions. Beyond the motions to suppress, he does not identify any other pretrial motions that his counsel should have filed. To raise an ineffective assistance of counsel claim on direct appeal, Miranda must make specific allegations of the conduct that he claims constitutes deficient performance. He fails to do so here. We agree with the State that this claim is insufficiently alleged.

[21] As a final matter, we note that Miranda also asserts that his trial counsel changed strategies in the middle of the trial. To the extent that he raises arguments unrelated to his assignment of error, we decline to address them. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[39]

### (iii) Failure to Seek
### Plea Negotiations

Miranda next argues that his trial counsel's performance was deficient because, he asserts, his counsel failed to initiate plea negotiations with the State. He cites to *Missouri v. Frye*.[40]

In *Frye*, the issue before the U.S. Supreme Court was whether defense counsel was ineffective in failing to inform the defendant about a plea offer before it expired. The Court held that defense counsel's performance was deficient in allowing the offer to expire without advising the defendant of

---

[39] *State v. Vanderford*, 312 Neb. 580, 980 N.W.2d 397 (2022).

[40] *Missouri v. Frye*, 566 U.S. 134, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012).

the offer or allowing him to consider it. That is not the situation here.

Miranda acknowledges that the record before us contains no entry of a plea, nor any stated plea offers. He suggests that "an evidentiary hearing may be necessary to explore the full extent of this error,"[41] but his claim amounts to a legal conclusion or mere speculation. Because Miranda fails to allege deficient performance with sufficient particularity, this claim lacks merit.

### (iv) Failure to Zealously Advocate

[22] Finally, Miranda argues that his trial counsel was ineffective in "failing to zealously advocate" for him.[42] Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity.[43] Miranda's assignment of error does not specifically allege any deficient conduct by his counsel.

If we were to look to Miranda's argument to try to provide the specificity required, all we can discern is that he primarily reasserts his arguments regarding voir dire and trial preparation, which we have already discussed. In addition, he vaguely asserts that his trial counsel was ineffective in appearing "completely uninterested"[44] and in stipulating to the foundation of security camera videos.

As we previously stated, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[45] We decline to excuse the specificity that Miranda fails

---

[41] Brief for appellant at 21.

[42] *Id.* at 26.

[43] *State v. Anders, supra* note 4.

[44] Brief for appellant at 28.

[45] *State v. Vanderford, supra* note 39.

to provide in the assignment of error. We merely note that the specific assertions he presents in argument were not specifically assigned, and in any event, the record on appeal would not have been sufficient to address his claim.

## VI. CONCLUSION

Viewing the evidence in the light most favorable to the prosecution, we determine Miranda fails to show that no rational trier of fact could have found the essential elements of his crimes beyond a reasonable doubt. Thus, his sufficiency of the evidence claims lack merit. He also failed to sufficiently allege ineffective assistance of trial counsel. Accordingly, we affirm the district court's judgment.

Affirmed.