IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. HICKMAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DAVID L. HICKMAN, APPELLANT.

Filed May 9, 2023.   No. A-22-677.

Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge. Affirmed.

Timothy P. Sullivan, of Sullivan Law, for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

MOORE, Judge.

## I. INTRODUCTION

David L. Hickman appeals his convictions and sentences in the district court for Lancaster County for assault in the first degree, use of a firearm to commit a felony, and possession of a firearm by a prohibited person. He was sentenced to consecutive terms of imprisonment totaling 34 to 58 years. On appeal, Hickman argues that there was insufficient evidence to support his convictions and that the sentences imposed were excessive. Hickman also assigns that his trial counsel provided ineffective assistance in several respects. We affirm.

## II. STATEMENT OF FACTS

On October 12, 2021, a complaint was filed in Lancaster County Court charging Hickman with assault in the first degree in violation of Neb. Rev. Stat. § 28-308 (Reissue 2016), a Class II felony; use of a firearm to commit a felony in violation of Neb. Rev. Stat. § 28-1205(1)(c) (Reissue

- 1 -

2016), a Class IC felony; and possession of a firearm by a prohibited person in violation of Neb. Rev. Stat. § 28-1206(1)(3)(b) (Cum. Supp. 2022), a Class ID felony.

The case was subsequently bound over to district court and an information charging Hickman with the same counts was filed on January 5, 2022. Hickman plead not guilty to all charges in the information. A jury trial was held in August 2022. The following evidence was adduced and additional trial evidence will be discussed in connection with our analysis below.

1. TRIAL EVIDENCE

Michael Nunn testified that Hickman is his cousin and that in the early hours of October 7, 2021, Hickman shot him in his right leg, left thigh, and left foot. That night, Nunn was with his girlfriend, Rebecca, and they were on their way to pick up Rebecca's children from her sister's home. Rebecca's sister, Jessica, was also Hickman's girlfriend. When the couple arrived at Jessica's home, Jessica and Hickman were standing outside. Rebecca exited Nunn's car from the passenger side and went inside the home with Jessica through an open garage door to retrieve her children.

Nunn stayed in the driver's seat of the car, playing music and drinking an alcoholic beverage. Nunn noticed Hickman standing in front of the home, but did not engage him in conversation. Hickman began walking past the front of Nunn's car and complimenting the music Nunn was playing. Nunn then heard the back passenger door open and saw Rebecca place one of her children into the car. Nunn exited the driver's seat and waited near the trunk to help Rebecca load her other children into the car. As Rebecca returned inside the home, Nunn was alone with Hickman in the driveway.

Nunn noticed Hickman's reflection in the car and realized that Hickman was standing on the other side of the car, opposite to the side Rebecca was using to load her children. Hickman then said something to Nunn, which Nunn was unable to hear over the music playing from the car. Nunn suddenly collapsed to the ground and saw Hickman standing over him with a gun pointed at him. Nunn knew that he had been shot and could not feel his right leg, but was unable to hear the gunshots over the loud music to determine how many times he had been shot.

Rebecca returned to the car to remove her child from the backseat as Nunn got into the car to drive himself to the hospital. On his way to the hospital, Nunn drove on the wrong side of a divided highway for some blocks. Once Nunn navigated to the correct side of the road, he called his brother to inform him that Nunn was driving to a hospital and stated "DJ, he just shot me."

Nunn's brother testified consistently with Nunn, confirming that he received a phone call from Nunn between midnight and 12:15 a.m. on October 7, in which Nunn told his brother that he was driving himself to the hospital because "DJ just shot me." Nunn's brother stated that he knew of only one DJ, who is his cousin, David Junior. Video footage entered into evidence from intersection cameras and the emergency room entrance also demonstrate Nunn driving on the wrong side of the road and arriving at the hospital with a bloody leg.

A doctor who performed two surgeries to Nunn's right leg testified to the extent of Nunn's injuries. The doctor noted that Nunn's right leg was shattered and required multiple surgeries to address the damage. Nunn's healing process was ongoing at the time of trial, 10 months after the shooting.

A neighbor of Jessica's testified that a little after midnight on October 7, she awoke to loud music booming out of a car stereo. For a time, the stereo quieted and the neighbor could hear voices, but could not determine what they were saying. The music then grew louder and the neighbor heard three gunshots in quick succession and called 911.

Responding Lincoln Police Department (LPD) officers found three shell casings at the scene, as well as a trail of blood, and a burnout tire mark in the driveway facing away from the home, indicating that a car had left the driveway quickly. Crime scene photos entered into evidence show blood and tire marks on a driveway, two shell casings on the concrete, and one shell casing under a bush.

Marcus Hefley, an LPD officer, was at the hospital on an unrelated call for service when Nunn was admitted to the emergency room. Hefley overheard a nurse advise that someone had driven into the ambulance bay with multiple gunshot wounds and Hefley went to assess the scene, discovering a significant amount of blood inside and outside of the car. Hefley learned through an LPD radio transmission that a shooting had been reported in central Lincoln.

Hefley was also advised by the nurse that the victim's brother was waiting in the lobby and Hefley later made contact with Nunn's brother in the hospital parking lot. During Hefley's conversation with Nunn's brother he was informed that Nunn had recently contacted his brother. Nunn's brother also testified to speaking with an LPD officer in the hospital parking lot shortly after the shooting.

Investigators at the scene were informed through an LPD radio transmission that a shooting victim, later identified as Nunn, had arrived by a private vehicle at the hospital. During the investigation, Hickman was identified as a suspect. Investigators interviewed Jessica and Rebecca in an effort to locate Hickman and to further investigate the shooting.

Hickman was located and arrested in the afternoon of October 7. Cole Jennings, an investigator with the LPD, conducted the first interview with Hickman shortly after his arrest. Jennings informed Hickman of his *Miranda* rights, which Hickman waived. A *Miranda* Warning and Waiver form dated October 7 and signed by Hickman was entered into evidence. During this initial interview, Hickman denied shooting Nunn and stated to Jennings that he was not at Jessica's home during the time of the shooting.

Joseph Villamonte, an investigator with the LPD, conducted a second interview with Hickman at the jail on the evening of October 7, after Hickman requested to speak with law enforcement. Hickman indicated to Villamonte that he wanted to tell his side of the story and "come clean about what happened." Villamonte reminded Hickman that he had previously been read his *Miranda* rights and asked if Hickman wanted to waive his rights to make a statement, which he confirmed he did. Hickman told Villamonte that he had been having conflict with Nunn for months prior to the incident on October 7. Hickman had previously received a noise complaint and so told Nunn to turn down the music he was playing at the time of the incident. Nunn appeared intoxicated to Hickman and told him that he would not lower the volume of the music. Hickman told Villamonte that he felt disrespected by Nunn denying his request. Nunn exited his car and walked towards the rear of his car and he then grabbed towards his waistband as though he was armed, so Hickman shot Nunn with his own gun. Nunn then got back in his car and drove away. After the shooting, Hickman went to his daughter's home.

During the interview, Hickman stated to Villamonte that if the trigger of his gun is touched once, it fires three times. When Villamonte asked where law enforcement could recover the gun used to shoot Nunn, Hickman would not disclose its location, but indicated that the gun would never be found. Hickman also disclosed to Villamonte that he was a convicted felon at the time of the shooting. A certified copy of a criminal case from the Iowa District Court for Polk County was entered into evidence and showed that Hickman had been convicted of felony drug charges in 2002.

Hickman testified in his own defense, and recanted his previous confession. He stated that he contacted law enforcement and requested to have an additional interview because Jessica had informed him that child protective services was attempting to remove her children from the home because of the shooting. Hickman believed that confessing to the shooting would keep the children in Jessica's care.

Hickman stated that he was supplied the details of the shooting by Jessica and Rebecca. Hickman testified that he was not present at Jessica's home when Nunn was shot, as he had been dropped off at his daughter's house around 11 p.m. or midnight on October 6 and stayed for 4 hours before Jessica retrieved him. Hickman also testified that he does not own a gun and did not possess a gun in October 2021.

Hickman's daughter testified that Hickman came to her home after midnight on October 7. She was aware of the time because she checked her phone before getting out of bed to answer the door and recalled seeing a "12" on the screen. Hickman's daughter estimated that he stayed at her home for about 30 minutes. Hickman appeared tired to her, but his appearance was not otherwise out of the ordinary.

## 2. VERDICTS AND SENTENCING

After an hour and 14 minutes of deliberation, the jury found Hickman guilty on all counts.

A sentencing hearing was held on September 14, 2022. The district court sentenced Hickman to 8 to 16 years' imprisonment on count I, assault in the first degree; 14 to 20 years' imprisonment on count II, use of a firearm to commit a felony; and 12 to 22 years' imprisonment on count III, possession of a firearm by a prohibited person. The sentences were ordered to be served consecutively and the court granted Hickman credit for 340 days already served.

Hickman appeals.

## III. ASSIGNMENTS OF ERROR

Hickman assigns, restated, that (1) there was insufficient evidence to support his convictions of assault in the first degree, use of a firearm to commit a felony, and possession of a firearm by a prohibited person; (2) his trial counsel was ineffective for (a) failing to file motions in limine to prevent the introduction of statements made by witnesses to law enforcement, (b) failing to object to statements made by witnesses to law enforcement, and (c) failing to request a continuance to secure the attendance of witnesses necessary to his defense; and (3) the district court imposed an excessive sentence on all three counts.

## IV. STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Miranda*, 313 Neb. 358, 984 N.W.2d 261 (2023). In an appeal of a criminal conviction, an appellate court reviews the evidence in a light most favorable to the prosecution. *Id*.

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *Id*. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020).

## V. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

Hickman assigns that the evidence was insufficient for the jury to find him guilty of assault in the first degree, use of a firearm to commit a felony, and possession of a firearm by a prohibited person.

Before addressing Hickman's arguments, we summarize the essential elements of his charges. A person commits the offense of assault in the first degree if he intentionally or knowingly causes serious bodily injury to another person. See § 28-308. Any person who uses a firearm . . . to commit any felony which may be prosecuted in a court of this state commits the offense of use of a deadly weapon to commit a felony. § 28-1205(1)(a). A person commits the offense of possession of a deadly weapon by a prohibited person if he possesses a firearm . . . and he has previously been convicted of a felony. See § 28-1206(1)(a)(i).

At trial, Nunn testified that Hickman shot him in the right leg, left thigh, and left foot in the driveway of Jessica's home while Nunn was waiting to help Rebecca load her children into his car. While Nunn did not see Hickman pull the trigger, he did see Hickman standing over him with a pointed gun after Nunn had collapsed to the ground. Nunn also testified that he and Hickman were the only individuals outside of Jessica's home at the time of the shooting, aside from Rebecca's sleeping child in the backseat of the car. Nunn called his brother on the way to hospital and identified Hickman as the shooter. Nunn's brother testified consistently to the phone call. Nunn's surgeon testified to Nunn's extensive injuries to his right leg.

While investigating the shooting, LPD officers found a burnout tire mark in Jessica's driveway, indicating that a car had quickly left the home, a trail of blood, and three shell casings nearby. A neighbor who called 911 to report the shooting testified to hearing three gunshots.

In Hickman's interview with Villamonte, he confessed to shooting Nunn and stated that once the trigger of his gun was pulled, it fired three times. Hickman also disclosed that he was a

convicted felon at the time of the shooting and a certified copy of his 2002 felony conviction in Iowa was entered into evidence. Viewing the record before us in the light most favorable to the prosecution, a rational fact finder could have found Hickman guilty of assault in the first degree, use of a firearm to commit a felony, and possession of a firearm by a prohibited person. See *State v. Miranda*, 313 Neb. 358, 984 N.W.2d 261, (2023).

Hickman argues that Nunn was a convicted felon who initially refused to cooperate with law enforcement's investigation into the shooting, and so his testimony lacked credibility. He additionally contends that the jury should have discounted his confession to Villamonte, as he explained at trial that he confessed based on a "misguided belief" that child protective services would remove Jessica's children from her home. Brief for appellant at 25.

While Hickman asks us to review the credibility of his and Nunn's trial testimony, we decline to do so. As precedent makes clear, reviewing the credibility of testimony is not the province of this court. See *State v. Miranda, supra* (appellate court does not resolve conflicts in evidence, pass on credibility of witnesses, or reweigh evidence; such matters are for finder of fact). In finding Hickman guilty of all three counts, the jury clearly understood Nunn's testimony to be more credible than Hickman's and we do not disturb this finding of fact on appeal.

Hickman also argues that the case was based upon circumstantial evidence, as no witnesses, including Nunn, testified to seeing Hickman shoot Nunn. We are not persuaded by this argument. A fact proved by circumstantial evidence is nonetheless a proven fact. *State v. Olbricht*, 294 Neb. 974, 885 N.W.2d 699 (2016). Circumstantial evidence is not inherently less probative than direct evidence. *Id*. Although no witnesses testified to seeing Hickman shoot Nunn, based on the cumulative circumstantial evidence presented at trial, the evidence was sufficient to support the jury's determination that Hickman committed the offenses of assault in the first degree, use of a firearm to commit a felony, and possession of a firearm by a prohibited person. This assignment of error fails.

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Hickman assigns three claims of ineffective assistance of trial counsel. An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *State v. Miranda*, 313 Neb. 358, 984 N.W.2d 261, (2023). When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id*.

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id*.

When a defendant's trial counsel is different from his or her counsel on direct appeal, as Hickman's is here, the defendant must raise on direct appeal any issue of trial counsel's ineffective

performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *Id*.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Miranda, supra*. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. To show prejudice under the prejudice component of *Strickland*, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *Id*.

The necessary specificity of allegations of ineffective assistance of trial counsel on direct appeal for purposes of avoiding waiver requires, at a minimum, allegations of deficient performance described with enough particularity for an appellate court to make a determination of whether the claim can be decided upon the trial record and also for a district court later reviewing a potential petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *State v. Drake*, 311 Neb. 219, 971 N.W.2d 759 (2022).

With these governing principles in mind, we turn now to address Hickman's three ineffective assistance of trial counsel claims.

(a) Failure to File Motions in Limine

Hickman first claims that his trial counsel was ineffective for failing to file motions in limine to prevent the introduction of statements made by witnesses to law enforcement officers, thus denying Hickman's due process right of confrontation. Hickman argues that both Villamonte and Jennings "testified in a very indirect way about Rebecca . . . saying something to them that caused them to seek Mr. Hickman." Brief for appellant 28-29.

Neither Villamonte nor Jennings testified to an actual statement made by Rebecca. Hickman notes that Villamonte testified to asking Rebecca during the initial investigation to clarify where the shooting took place and where Nunn had parked his car, and that Rebecca did a reenactment at the scene of what she observed during the shooting. However, Villamonte did not repeat Rebecca's observations or statements made to him. Hickman also points to Jennings' testimony that he contacted Hickman's father at his residence after speaking with Rebecca. Jennings likewise did not repeat any specific statement made by Rebecca to him.

Hickman fails to allege what statements by Rebecca would have been limited or excluded had a motion in limine been made, and on what grounds. Allegations on direct appeal of ineffective assistance of trial counsel for failing to make a motion under some broad category without more detail as to the subject of and grounds for the motion, are, like claims for failing to investigate or call "witnesses," mere placeholders. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). Because Hickman fails to explain with sufficient particularity the subject of the motions in limine he asserts trial counsel ought to have made or why there would have been grounds for filing the motions, he has failed to sufficiently allege deficient performance.

### (b) Failure to Object to Hearsay Statements

Next, Hickman assigns that his trial counsel was ineffective for failing to object to statements made by witnesses to law enforcement officers, denying Hickman's right of confrontation. Hickman argues that trial counsel did not object to Villamonte's or Jennings' testimony which contained hearsay statements by Rebecca. Hickman does not argue any other basis for an objection to the investigators' testimony.

Again, Hickman does not point to any specific statement made by Rebecca to investigators. Our review of the record reveals that the investigators made references to conversations with Rebecca, but did not repeat out-of-court statements made by Rebecca during their testimony. Because the investigators' testimony did not contain hearsay statements by Rebecca, we cannot say that trial counsel was deficient for failing to make hearsay objections during trial. See Neb. Rev. Stat. § 27-801(3) (Cum. Supp. 2022) (defining hearsay as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted). This claim fails.

### (c) Failure to Request Continuance

Hickman also assigns that his trial counsel was ineffective for failing to request a continuance to secure the attendance of witnesses necessary to his defense. Hickman argues that Rebecca and Jessica were necessary to his defense and that neither one appeared at trial. Hickman concedes that both his trial counsel and the State made several attempts to subpoena both witnesses, without success, and his trial counsel filed a notice of alibi defense prior to trial. Hickman does not allege how a continuance would have facilitated in serving a subpoena on both witnesses, particularly when the witnesses had not been located for service. As such, Hickman has failed to show that trial counsel's performance was deficient and this claim fails.

### (d) Failure to Raise Impairment in Suppression Hearing

Lastly, Hickman argues that he was impaired when he gave his statements to law enforcement, but the issue was not raised by trial counsel at the suppression hearing. Hickman did not specifically allege this deficient performance in his assignments of errors. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Fernandez*, 313 Neb. 745, 986 N.W.2d 53 (2023). Thus, Hickman has failed to raise the claim on direct appeal and we do not address it further. See *State v. Miranda*, 313 Neb. 358, 984 N.W.2d 261 (2023).

### 3. EXCESSIVE SENTENCES

Hickman assigns that the sentences imposed were excessive and an abuse of discretion.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020). When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense,

and (8) the amount of violence involved in the commission of the crime. See *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Hickman was convicted of a Class IC felony (use of a firearm to commit a felony), a Class ID felony (possession of a firearm by a prohibited person), and a Class II felony (assault in the first degree); all of which are punishable by a maximum of 50 years' imprisonment. Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2022). A Class IC felony has a mandatory minimum five years' imprisonment and a Class ID has a mandatory minimum three years' imprisonment. *Id*. Using a firearm to commit a felony is a separate and distinct offense from the felony being committed, and sentences imposed for using a firearm to commit a felony shall be consecutive to any other sentence imposed. See § 28-1205(3). Hickman was sentenced to consecutive terms of 14 to 20 years' imprisonment on the Class IC felony charge, 12 to 22 years' imprisonment on the Class ID felony charge, and 8 to 16 years' imprisonment on the Class II felony charge. Thus, his sentences were within the statutory range.

Hickman argues that the trial court failed to adequately consider all of the relevant statutory factors; in particular, his "history, character and condition." Brief for appellant at 31. Hickman points to his mental health issues, including his PTSD diagnosis and efforts to manage his panic attacks, and his need for medication and counseling. He also notes that he has obtained his GED and a framing certificate, and has owned a detailing business for the last several years.

The presentence investigation report (PSI) is over 500 pages long and shows that Hickman's criminal history includes several convictions in Iowa; including for possession with intent, criminal mischief in the fourth degree (three charges), domestic abuse assault without intent causing injury (two charges), and a controlled substance violation. In Nebraska, Hickman was convicted in 2014 of injure or destroy property of another, for which he was fined $250; in 2016 of having no proof of ownership or of financial responsibility, and driving on a suspended license, for which he was fined a total of $375; and in 2020 of disturbing the peace by fighting and injure or destroy property of another, for which he was sentenced to 30 days' house arrest and 30 days' imprisonment. On the Level of Service/Case Management Inventory assessment, Hickman scored in the very high risk to reoffend overall.

At the sentencing hearing, the trial judge indicated that he had read and reviewed the lengthy PSI and considered Hickman's assertion of innocence. The judge indicated that he had considered all of the relevant factors, including Hickman's age, mentality, background, history, family situation, education, and record of any mental health or addiction issues. Due to the "difficult" nature of the case, the judge found imprisonment to be necessary.

In our review of the record, we cannot say that the trial court abused its discretion in the sentences imposed.

## VI. CONCLUSION

For the reasons set forth above, we affirm Hickman's convictions and sentences.

ADDRESS: AFFIRMED.