IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

KNIGHT V. DAMME

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

TYRELL KNIGHT, APPELLANT,

V.

JEFFREY A. DAMME ET AL., APPELLEES.

Filed April 11, 2023.    No. A-22-143.

Appeal from the District Court for Johnson County: RICKY A. SCHREINER, Judge. Affirmed.

Tyrell Knight, pro se.

Renee A. Eveland and Nathan D. Clark, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellee Correct Care Solutions, L.L.C.

Douglas J. Peterson, Attorney General, and James A. Campbell for appellees Harbans Deol, Brad Hansen, Scott Busboom, Lorna Patterson, Bryan Jenkins, and Scott Frakes.

MOORE, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

### INTRODUCTION

Tyrell Knight sued the Nebraska Department of Correctional Services (NDCS) and Correct Care Solutions (CCS), as well as various individual defendants in their official and individual capacities. Knight claimed that while incarcerated at the Tecumseh State Correctional Institution (TSCI) and the Nebraska State Penitentiary (Penitentiary), he was assaulted by other inmates on four separate occasions in 2016. The district court granted summary judgment in favor of the defendants by two separate orders, from which Knight now appeals. We affirm.

- 1 -

BACKGROUND

We initially note that the record on appeal does not include a bill of exceptions because Knight did not file a request for one. It is incumbent upon the party appealing to present a record which supports the errors assigned. *Roskop Dairy v. GEA Farm Tech.*, 292 Neb. 148, 871 N.W.2d 776 (2015) *disapproved on other grounds, Weyh v. Gottsch*, 303 Neb. 280, 929 N.W.2d 40 (2019). See, also, Neb. Rev. Stat. § 25-1140 (Reissue 2016) (procedure for preparation of bill of exceptions regulated by Supreme Court rules of practice); Neb. Ct. R. App. P. § 2-105(B)(2)(a) (appellant shall file request for bill of exceptions at same time as notice of appeal is filed; failure to do so shall be deemed waiver of right to request bill of exceptions); Neb. Ct. R. App. P. § 2-105(B)(2)(b) (appellant to file request identifying matter to be contained in bill of exceptions). When there is no bill of exceptions, an appellate court examines and considers only the pleadings in conjunction with the judgment reviewed. See *William P. v. Jamie P.*, 313 Neb. 378, 984 N.W.2d 285 (2023). In the absence of a record of the evidence considered by the court, it is presumed on appeal that the evidence supports the trial court's orders and judgment. *Id*. We will conduct our review accordingly.

KNIGHT'S COMPLAINT

On July 25, 2018, Knight, pro se, filed a complaint against NDCS and CCS, as well as the following individual defendants in their official and individual capacities: Jeffrey Damme, TSCI Medical Director for CCS; Jane Doe #1, TSCI Nurse for CCS; Jane Doe #2, TSCI Nurse for CCS; John Doe #1, TSCI Nurse for CCS; Harbans Deol, NDCS Deputy Director of Correctional Services; Brad Hansen, TSCI Warden; Scott Busboom, TSCI Deputy Warden; Lorna Patterson, TSCI Lieutenant; Bryan Jenkins, TSCI Corporal; Unknown Doe #1, TSCI "bubble officer"; and Scott Frakes, NDCS Director. Like the district court, we will collectively refer to Deol, Hansen, Busboom, Patterson, Jenkins, and Frakes as the "State Defendants." Knight asserted claims under 42 U.S.C. § 1983, the Nebraska Correctional Healthcare Services Act, and the Nebraska Hospital Medical Liability Act. He also alleged that his constitutional rights to due process of law, equal protection of the law, and to be free from cruel and unusual punishment were violated. He further asserted claims of "medical malpractice and[] negligence."

Knight "sought to exhaust his administrative remedies" and he attached several grievances as exhibits to his complaint, which he also discussed throughout the complaint. Knight sought a declaratory judgment related to "double celling of inmates in segregation like environments" and "[s]evere overcrowding and/or understaffing," which put inmates "at substantial risk of serious harm and/or death" and which violated inmates' rights to due process, equal protection, and to be free from cruel and unusual punishment. He also sought declaratory relief related to the "denial, delay, and/or providing inadequate medical treatment" and "failure to check, verify, and/or approve needed medical care and services to inmates such as Knight," which he claimed violated inmates' rights to be free from cruel and unusual punishment. Knight also sought "nominal, compensatory, and/or punitive damages" against the defendants on various grounds.

According to Knight, NDCS had created a "Special Management Unit (SMU)" at TSCI to reduce overcrowding. He claimed that "SMU West" was used to transition "the most dangerous and violent inmates" into the general population at TSCI and was the "first opportunity for [such

inmates] to intermingle unrestrained with other inmates." He alleged that "numerous serious assaults" had taken place at "SMU West," as well as the killing of an inmate.

On February 28, 2016, while being held in "SMU West," Knight was "seriously assaulted" for over 10 minutes by other inmates. The assault "lasted until [he] was able to push a call button to alert correctional staff" and TSCI prison officials "delayed and/or failed to respond to the assault . . . until after Knight pressed the call button." As a result of the assault, Knight was in the "TSCI hospital" for 4 hours. Knight claimed that Jenkins and the unknown "bubble officer" who was in "direct control of the camera, speaker, and control systems that facilitate inmate movements under his supervision," both "delayed and/or failed to respond to the assault on Knight until after Knight pressed the call button." On February 29, he initiated an "[e]mergency [g]rievance," which was labeled as an "Informal" grievance and contained Knight's description of the assault and a request that he be transferred out of TSCI. On March 2, Knight received a response to his "Informal" grievance, stating that he was moved to "Housing Unit 1." Knight filed a "Step One" grievance on March 11, and on March 21 the "Step One" grievance was returned to him unanswered "because [he] addressed more than one issue." Knight filed a "Step Two" grievance on March 31.

On March 21, 2016, Knight sent an "NDCS Inmate Interview Request" to the TSCI warden, which he attached as an exhibit to his complaint. The document contained an account of his concerns regarding his safety at TSCI and a request that he be transferred out of the facility. The document also contained the warden's response, which stated that Knight was "no longer housed in SMU" and was instead "living in HU1." Knight alleged that he sent an "NDCS Inmate Interview Request" to the deputy warden of TSCI on April 17, again requesting that he be transferred to "NSP or LCC." The deputy warden's response stated that Knight's housing placement was appropriate for the time being and that his placement would be reviewed again at a later date.

In May 2016, Knight was again assaulted, this time while sleeping in a "[p]rotective [c]ustody unit." On May 12, following the assault, Knight sent another "NDCS Inmate Interview Request" to the deputy warden, requesting a transfer out of TSCI. Knight was then "placed in another [p]rotective [c]ustody unit."

Knight was assaulted a third time on July 25, 2016, while being held in a "TSCI medical holding cell." Following this assault, he experienced "left side chest pain and shortness of breath" and was examined by CCS nurses, Jane Doe #1, Jane Doe #2, and John Doe #1. Knight alleged that his symptoms were consistent with those of "[t]raumatic [p]neumothoras or [h]emothorax." That same day, he initiated an "Informal" grievance regarding the assault, wherein he stated that he was "[a]ssaulted by three (3) Mexicans" and he was in pain and had problems breathing. He also sent an "NDCS Inmate Interview Request" to the deputy warden, indicating that another inmate had witnessed the July 25 assault. On July 26 and 27, Knight initiated two additional "Informal" grievances regarding the July 25 assault.

According to Knight's complaint, on July 26, 2016, CCS medical personnel took radiographs of Knight's chest and ribs but did not conduct any "follow up treatment." On July 29, he was transferred from TSCI to the Penitentiary.

On July 31, 2016, Knight was assaulted a fourth time while at the Penitentiary and he was taken to a private hospital to be treated for his injuries. He alleged that he was "diagnosed with [h]emothorax" and was not discharged from the hospital until August 4.

On September 5, 2016, Knight filed an "NDCS Inmate Interview Request to [the] NSP Unit Administrator" alleging that he had filed various grievances without response. On September 8, Knight filed an "Informal" grievance wherein he claimed that he received inadequate medical care at TSCI following the July 25 assault. On September 28, Knight filed a "Step One" grievance regarding the alleged inadequate medical care and on October 21, he filed a "Step Two" grievance regarding the same.

In response to Knight's complaint, the State Defendants filed a Motion to Dismiss based on lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted. The district court subsequently entered an order dismissing some of the claims as to some of the State Defendants in their official or individual capacities. CCS filed an answer to Knight's complaint, admitting that CCS was "contracted . . . to provide medical services at [TSCI] at [the] times relevant to the allegations in [Knight's] [c]omplaint." CCS denied the material allegations in Knight's complaint and raised numerous affirmative defenses, including that Knight failed to exhaust his administrative remedies.

APRIL 2019 AND FEBRUARY 2022
SUMMARY JUDGMENT ORDERS

On December 12, 2018, CCS filed a motion for summary judgment and on January 21, 2019, CCS filed a motion for a stay of discovery. On January 31, the district court held a hearing on CCS' motion for summary judgment. According to the court's "Journal Entry and Order" after the hearing, it granted CCS' motion for a stay of discovery, and it took the motion for summary judgment under advisement.

The district court entered an order on April 30, 2019, granting CCS' motion for summary judgment, finding no genuine dispute as to numerous material facts, including that following the "attack" on July 25, 2016, Knight was seen by CCS personnel, at which time he "exhibited symmetrical lung movement, had clear lungs, exhibited non-labored breathing, was shouting, had greater than 97% oxygen levels at room air, and showed no marks, redness, or bruising other than a scratch to his right wrist"; an x-ray of Knight's chest was ordered on the same day, but not performed until July 27; Knight was transferred to the Penitentiary on July 29 before any CCS employee had the opportunity to review his x-ray report; CCS exercised no control over inmate housing or transfers; Knight "did not exhaust his administrative remedies by complying with the NDCS inmate grievance procedure respecting his treatment by CCS after the July 25, 2016 attack"; CCS' last day of providing services at TSCI was July 24, 2017, and it has never provided services at the Penitentiary; the care provided to Knight by CCS and its employees was in compliance with "generally recognized standards of medical care applicable to Tecumseh, Nebraska, or similar communities for physicians, physician assistants, or nurses who attend patients under circumstances the same as, or similar to, those in the case of Knight"; no "acts or omission of any CCS employee was causally related to any injury or damage sustained by Knight"; and Knight failed to provide to CCS through discovery requests the "substance of facts or related opinions of any medical expert whom he expects to call as an expert witness at trial." As we will set forth in more detail later, the court concluded that the grievances filed by Knight did not satisfy the requirement that he exhaust his administrative remedies. The court also found against Knight as to his constitutional and statutory claims, his medical negligence claim, and his request for

declaratory relief. Since Knight did not assign error to those aspects of the court's decision, we will not discuss them further.

On July 30, 2021, the State Defendants filed a motion for summary judgment. The district court held a hearing on the motion on September 20. On February 9, 2022, the court entered an order granting summary judgment to the State Defendants. As pertinent to our review, the court's findings of undisputed material facts included acknowledgement of Knight's involvement in a physical altercation on February 28, 2016, during which Knight threw the first punch; that Knight did not have a history of any arguments, threats or fights with the other inmates involved in the altercation, nor had Knight previously notified NDCS of any safety concerns regarding the other inmates; Knight was reassigned to protective custody housing after the February 28 incident; Knight was assaulted on May 11 while in his room by another inmate with whom Knight had no prior history of altercations, arguments, or threats; the altercation "took [Knight] by surprise"; Knight was thereafter reassigned to a different protective custody housing unit and was involved in a third altercation with two inmates while waiting in a medical holding cell; Knight claimed he did not know those inmates and did not have any prior history of arguments, threats, or altercations with them, nor had Knight notified NDCS of any safety or security concerns related to those inmates; the July 25 altercation "took [Knight] by surprise"; Knight's vital signs after the July 25 incident "were within normal limits," he had "symmetrical lung movement, had clear lungs, non-labored breathing, had greater than 97% oxygen levels, he had no visible marks, bruising, or redness other than a small scratch on his right wrist"; Knight was administered Tylenol for his "professed pain and a chest x-ray was ordered"; the x-ray was rescheduled from July 26 to July 27 due to "other inmate movements"; the chest x-ray was taken on July 27 and a report was received by CCS on July 29, the same day Knight was transferred to the Penitentiary; Knight did not make any further requests for medical care at the Penitentiary from July 29 to July 31 and he refused protective custody at the Penitentiary on July 30; Knight was involved in a fourth altercation on July 31 with an inmate with whom Knight did not have any history of arguments, threats, or altercations, nor had Knight notified NDCS of any safety or security concerns related to that inmate; Knight was transported to a hospital after the attack and returned to the Penitentiary on August 4; NDCS had an established administrative remedies procedure for inmates "pursuant to Neb. Rev. Stat. §§ 83-4,111 through 83-4112, 83-4,134 through 83-4,139, 42 U.S.C. 1997(e), and 68 Neb. Admin. Code, ch.2."; Knight did not exhaust his administrative remedies after the May 11, July 25, and July 31 altercations; Dr. Deol started his employment with NDCS on January 8, 2017, and had not personally treated Knight, nor was he aware of Knight's medical condition; "[t]he medical treatment provided to [Knight] from July 25, 2016, through July 31, 2016, was within the appropriate standard of care" and was "not causally related to any injuries or damages sustained by [Knight]."

The district court determined that Knight failed to exhaust his administrative remedies for the May 11, July 25, and July 31, 2016, altercations, and therefore, the State Defendants were entitled to judgment as a matter of law as to those § 1983 claims. We will set forth the court's analysis on this issue later in the opinion. Regarding the February 28, 2016, altercation, the court found that Knight exhausted his administrative remedies, but that the State Defendants were entitled to qualified immunity because "their conduct did not violate a clearly established statutory

or constitutional right of which a reasonable person would have known." Knight does not challenge this determination on appeal so we will not address it further.

The district court also addressed the Eighth Amendment which "prohibits cruel and unusual punishment," and which imposes duties on prison officials to provide humane conditions of confinement. Citing to *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994), the court noted that in a failure to protect claim under the Eighth Amendment, a plaintiff must establish that he is incarcerated under conditions that objectively pose a substantial risk of serious harm and prison officials exhibited deliberate indifference to inmate health or safety. After describing the relevant evidence, the court concluded that Knight failed to "clearly communicate or alert the State Defendants that there was a substantial risk of serious harm" to Knight, that the four altercations were "either initiated by [Knight] or constituted surprise attacks," and the "State Defendants responded reasonably." We note here that although much of Knight's brief focuses on the issue of "deliberate indifference" by CCS and the State Defendants in their handling of the various incidents, Knight did not assign error to that aspect of the court's decision, and we therefore find it unnecessary to set forth the court's analysis on this issue in greater detail.

The district court further found in favor of the State Defendants as to Knight's alleged tort claims under the Nebraska Correctional Health Care Services Act, the Nebraska Hospital Medical Liability Act, and Nebraska's State Tort Claims Act. Finally, the court also denied Knight's request for declaratory relief because Knight either had "other equally serviceable remedies available to him" or the "requested relief [was] moot." Again, because Knight does not assign error to these determinations by the district court, we will not set forth these portions of the court's decision further.

The district court concluded by stating that "[a]ny request for relief not specifically granted by [the] order is denied," effectively disposing of any remaining claims and any remaining defendants.

ASSIGNMENTS OF ERROR

Knight assigns that the district court erred in granting CCS summary judgment because (1) not all defendants had been properly served and (2) it was "premature." However, Knight's supporting argument as to these two errors consists of two sentences, which assert only that defendant Damme was not served "pursuant to Neb. Rev. Stat. § 25-527," and the district court erred by giving CCS a "Stay of Discovery (premature summary judgment), according to Neb. Rev. Stat. § 25-1332." Because the argument section of Knight's brief simply restates his first two assigned errors without providing any supporting argument, we decline to address these assigned errors. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Miranda*, 313 Neb. 358, 984 N.W.2d 261 (2023).

Additionally, Knight assigns that the district court did not "pay[] close attention" to Knight's evidence and did not mention that Knight was pro se "and should be held to a lesser standard accordingly." Once again, because the argument section of Knight's brief fails to specifically provide any argument in support of these alleged errors, we decline to address them. See *id*. And, as addressed earlier, in the absence of a record of the evidence considered by the

court, it is presumed on appeal that the evidence supports the trial court's orders and judgment. *William P. v. Jamie P.*, 313 Neb. 378, 984 N.W.2d 285 (2023).

The only error assigned for which Knight provides some discussion in the argument section of his brief is his assertion that the district court erred in granting summary judgment to CCS and the State Defendants because the court "assum[ed]" Knight never exhausted his administrative remedies even though his complaint showed that he filed grievances before initiating his lawsuit. We will therefore limit our review to this assigned error.

## STANDARD OF REVIEW

The only issue which will be considered on appeal of a summary judgment in the absence of a bill of exceptions is the sufficiency of the pleadings to support the judgment. *Sindelar v. Hanel Oil, Inc.*, 254 Neb. 975, 581 N.W.2d 405 (1998).

## ANALYSIS

A bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered. *Bohling v. Bohling*, 304 Neb. 968, 937 N.W.2d 855 (2020). The absence of a bill of exceptions, being the only vehicle for bringing evidence to an appellate court, results in the presumption that the evidence sustains the trial court's findings that there was no genuine issue as to any material fact and that the case was correctly decided. *Sindelar v. Hanel Oil, Inc., supra*. As set forth above, in the absence of a bill of exceptions on appeal of a summary judgment, we only consider the sufficiency of the pleadings to support the judgment. See *id*. In determining whether or not the pleadings support the judgment, they must be taken as a whole, and construed so as to support the judgment, if capable of such construction. *Scarpello v. Continental Assur.*, 187 Neb. 395, 191 N.W.2d 444 (1971). The presumption is that the relief granted is authorized by the pleadings, and the burden is upon him who attacks the judgment to show that it was not. *Id*.

Knight contends that the district court erred in granting summary judgment to CCS and the State Defendants for his claims brought under § 1983 based on its finding that Knight failed to exhaust his administrative remedies.

Ordinarily, plaintiffs pursuing civil rights claims under § 1983 need not exhaust administrative remedies before filing suit in court. See *Porter v. Nussle*, 534 U.S. 516, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). However, pursuant to the Prisoner Litigation Reform Act (PLRA), prisoners are required to exhaust administrative remedies before bringing an action under § 1983. See *Kellogg v. Nebraska Dept. of Corr. Servs.*, 269 Neb. 40, 690 N.W.2d 574 (2005). The PLRA requires proper exhaustion of administrative remedies, which means "using all steps that the agency holds out, and doing so properly." *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S. Ct. 2378, 2385, 165 L. Ed. 2d 368 (2006). An inmate satisfies the exhaustion requirement by pursuing "the prison grievance process to its final stage" to "an adverse decision on the merits." *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015).

Here, the district court found that the NDCS adopted and promulgated "68 Neb. Admin, Code, ch, 2," which governs inmate grievance procedures. The court described the procedure in its April 30, 2019, summary judgment order favoring CCS as follows:

First, an inmate may submit an "Informal Grievance" within three days after an incident. 68 Neb. Admin. Code § 2-003.02[]-005.03. Second, if the inmate is dissatisfied with the response to the Informal Grievance, he may file a "Step[ ]One Grievance" with the Warden within 15 days of receipt of the response (or within 20 days of the incident if no response is received), . . . at which point the grievance becomes "formal[.]" . . . When filing a Step[]One Grievance, "[t]he Step[ ]One Grievance Form must be used." *Id*. § 2-003.03 . . . Third, the inmate may appeal the Warden's response to a Step[ ]One Grievance by submitting a "Step[ ]Two Grievance" to the NDCS Director within 10 days of receiving the response.

The court provided a similar summary of the grievance procedure in its February 9, 2022, summary judgment order favoring the State Defendants as well. The February 9 order further stated that "[t]his process is the only mechanism for inmates to properly exhaust their administrative remedies at NDCS" and that "administrative exhaustion for inmates incarcerated in an NDCS facility does not occur until an inmate timely files and receives an adverse decision to his/her Step-Two Grievance form." The court found that Knight followed the NDCS grievance procedure only for the assault that took place on February 28, 2016. The grievances attached to Knight's complaint support the court's finding.

Knight filed an "Informal" grievance on February 29, 2016, regarding the February 28 assault. Knight received a response on March 2 and timely filed a "Step One" grievance on March 11. Knight received a response on March 21 and timely filed a "Step Two" grievance on March 31. Although it appears that Knight generally followed the NDCS grievance procedure for the February 28, 2016, assault, the district court ultimately disposed of his claims involving the assault on qualified immunity grounds, which Knight does not assign as error. As such, we do not further address the court's decision regarding Knight's claims involving the February 28 assault. See *TNT Cattle Co. v. Fife*, 304 Neb. 890, 937 N.W.2d 811 (2020) (alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court).

Knight filed two additional "Informal" grievances on July 25 and 26, 2016. However, it does not appear from our review of the pleadings that he filed "Step One" or "Step Two" grievances regarding the events detailed in those "Informal" grievances. As such, the pleadings support the district court's finding that Knight failed to comply with the NDCS grievance procedure for the incidents described in the July 25 and 26 "Informal" grievances.

On September 8, 2016, Knight filed another "Informal" grievance wherein he discussed the July 25 assault and stated that he notified CCS medical staff that he was experiencing chest pain following the assault. He further stated in the grievance that, following another assault that took place on July 31, he was hospitalized. There, he learned that he had "a collapsed lung with internal bleeding." He implies that his injury was the result of the July 25 incident and that he was not properly treated at the time. Knight filed "Step One" and "Step Two" grievances regarding the alleged inadequate medical treatment. However, NDCS returned his "Step Two" grievance unanswered because he failed to timely initiate the grievance process. The pleadings indicate that Knight learned the extent of his injuries during his hospitalization from July 31 to August 4. However, he did not file a grievance until September 8, well after the 3-day window allotted by

the NDCS grievance procedure. Thus, the pleadings support the district court's finding that Knight failed to comply with the NDCS grievance procedure for this incident as well. Further, Knight's claim that Penitentiary staff "interfered" with his grievance process by not processing his grievance, brief for appellant at 22, was not a finding made by the district court, and in the absence of a bill of exceptions, it is presumed on appeal that the evidence supports the trial court's orders and judgment. See *William P. v. Jamie P.,* 313 Neb. 378, 984 N.W.2d 285 (2023).

CONCLUSION

Upon examining the pleadings and considering the presumption stated above, we conclude that the pleadings are sufficient to support the district court's grant of summary judgment in favor of the CCS and the State Defendants. We therefore affirm the court's April 30, 2019, and February 9, 2022, summary judgment orders.

AFFIRMED.