Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/04/2024 12:05 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
M,A, YAH, APPELLANT.
___ N.W.3d ___

Filed September 27, 2024.    No. S-23-866.

1. **Trial: Appeal and Error.** An issue not presented to or decided on by the trial court is not an appropriate issue for consideration on appeal.
2. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.
3. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.
4. **Ordinances: Judicial Notice: Appeal and Error.** Under the "ordinance rule," an appellate court will not take judicial notice of a municipal ordinance not in the record.
5. **Intent: Words and Phrases.** Intent is the state of the actor's mind when the actor's conduct occurs.
6. **Criminal Law: Intent: Circumstantial Evidence.** When an element of a crime involves existence of a defendant's mental process or other state of mind of an accused, such elements may be proved by circumstantial evidence.
7. **Criminal Law: Intent.** A trier of fact may infer that the defendant intended the natural and probable consequences of the defendant's voluntary acts.
8. **Appeal and Error.** In the absence of plain error, when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition.

Appeal from the District Court for Douglas County, Peter C. Bataillon, Judge, on appeal thereto from the County Court for Douglas County, Stephanie R. Hansen, Judge. Judgment of District Court affirmed.

Sarah M. Mooney, of Mooney Law Office, for appellant.

Kevin J. Slimp, Omaha City Prosecutor, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## I. INTRODUCTION

The defendant appeals from the district court's affirmance of his conviction by the county court for obstructing the administration of law in violation of Omaha Mun. Code, ch. 20, art. II, § 20-21 (1980). The defendant argues the evidence was insufficient to find that he had the requisite intent to obstruct or interfere with a law enforcement officer performing an official duty. He also argues that the county court erroneously applied Neb. Rev. Stat. § 28-906 (Reissue 2016), which he was not charged with, in finding him guilty of violating § 20-21. Because he believes the evidence did not support finding him guilty beyond a reasonable doubt, the defendant argues his conviction violated due process. We affirm the conviction.

## II. BACKGROUND

M,A, Yah was charged by criminal complaint in the county court for Douglas County with one count of obstructing the administration of law in violation of § 20-21. The complaint alleged that on or about September 23, 2021, Yah "did purposely or knowingly do any act, refuse to do any act, or commit any act of omission with the intent to obstruct or interfere with any law enforcement officer . . . performing an official duty."

A bench trial was held. Photographs were entered into evidence. A law enforcement officer testified for the State, and Yah and his son, M,A, Yah II (Yah Jr.), testified for the defense.

The county court inventory of evidence does not include a copy of the ordinance. Likewise, the list of exhibits offered before the district court on appeal does not include the ordinance. The ordinance does not appear anywhere else in the appellate record.

## 1. Trial

### (a) Testimony of Deputy U.S. Marshal

Mark Anderson, a deputy U.S. marshal, testified that on September 23, 2021, he was on duty with the Metro Fugitive Task Force looking for Yah Jr., who had a felony warrant for his arrest. Anderson's team consisted of three law enforcement officers in three unmarked vehicles with tinted windows. They were watching the apartment building where Yah lived.

Around 6:45 a.m., Anderson observed Yah exit the apartment building with "a large dog on a leash." Anderson was familiar with Yah and was "aware of his violent criminal history." Anderson estimated the dog weighed 70 to 80 pounds. The dog was a Cane Corso.

It appeared that Yah was looking around and using his cell phone, first to text and then to make a call. Shortly thereafter, Anderson saw a person matching the description of Yah Jr. "come out from behind the apartment." He was wearing a hoodie, with the hood on his head; carrying a backpack; and "walking very briskly" toward the front of the building where Yah was standing.

One of the other officers activated his vehicle's lights, and the three officers exited their vehicles. Anderson testified the officers were wearing tactical gear that indicated they were members of law enforcement. The officers ordered Yah Jr. to get down on the ground, and Yah Jr. complied immediately.

Before the officers could secure Yah Jr. with handcuffs, Yah, who was approximately 30 yards away, approached with

the dog. Anderson testified that Yah started yelling, which was "very distracting," and that Yah "got very close to [the officers]." Anderson ordered Yah to get back, and Yah did not comply. On cross-examination, Anderson confirmed Yah's noncompliance interfered with the officers' ability to place Yah Jr. in handcuffs.

On cross-examination, Anderson confirmed that both Yah and Yah Jr. were Black men. Anderson testified that "one of the things" he believed Yah to have said was not to shoot Yah Jr. He also testified Yah said something similar to "'[p]ut your guns away. He's on the ground. He's complying with you.'" Anderson testified that Yah "was saying a lot of things."

Anderson testified that he continued to repeat the command for Yah to get back and to get the dog back. The dog "was getting very excited, barking, jumping." Anderson was "amped-up" and concerned that if Yah let go of the leash, one of the officers would be bit by the dog. Anderson did not know if Yah was carrying a weapon and "was concerned the situation could be escalated to possibly deadly force, either on [Yah] or the dog, if [Yah] did not follow [his] commands to step back away from [the officers]."

At some point, Anderson told Yah that if he did not retreat, the dog could be shot. Yah finally complied and "backed off the scene a little bit, [and] gave [the officers] some space." Anderson estimated the period of noncompliance lasted 20 to 30 seconds.

The officers were then able to redirect their attention to Yah Jr. and secure him in handcuffs. One of the other officers placed Yah Jr. under arrest and took him to a law enforcement vehicle.

Yah Jr.'s backpack was still on the ground and had not yet been searched for contraband or weapons. Yah walked to the backpack and picked it up. Anderson ordered Yah to put the backpack down, and Yah did not comply.

Anderson testified that Yah was arguing with him and yelling at him while he repeatedly and loudly ordered Yah to put

the backpack down, and that the dog again "got really excited and [was] jumping and barking." While Yah held the backpack, Anderson and Yah continued their "verbal standoff." Eventually, Anderson pulled out his firearm. The confrontation lasted approximately 20 to 30 seconds until Yah eventually dropped the backpack and backed off.

(b) Testimony of Yah and Yah Jr.

Yah testified that while he knew Yah Jr. was being investigated for a crime, he did not know Yah Jr. had a warrant out for his arrest. On the morning of the incident, Yah took the dog outside first thing in the morning, as was typical for him.

Yah Jr. was living with Yah part of the time. Yah Jr. worked as a blinds installer and was headed to work when he was arrested. Yah Jr. testified that he carried his laptop and workout gear in his backpack and that he dropped his backpack and "got on the ground immediately" when confronted with the three officers with their guns drawn.

Yah testified that after Yah Jr. complied with the officers' request to get down on the ground, Anderson still had "his gun . . . trailing down with [Yah Jr.]." Yah testified that he was scared and that he yelled and "begged" Anderson not to shoot Yah Jr. Yah explained that he lived in Minnesota "when George [Floyd] got killed" by law enforcement.

Yah denied stepping toward the officer and testified the dog did not bite or growl during the incident. Yah testified that the dog was "somewhere between nine to 11 months" on the day Yah Jr. was arrested and weighed approximately 50 to 55 pounds. According to Yah, it was an emotional support dog and wore a collar so indicating.

Yah denied having any intent to prevent the officers from arresting Yah Jr. Yah testified that he grabbed the backpack to look for Yah Jr.'s cell phone in order to call Yah Jr.'s employer to let them know Yah Jr. would not be in. Yah reported to a police sergeant that day that he felt Anderson had been "aggressive." Yah was cited on the obstruction charge on September 27, 2021.

### 2. Arguments to Trial Court

Defense counsel argued to the trial court that Yah lacked the requisite intent to obstruct or interfere with a law enforcement officer performing an official duty. Defense counsel asserted that Yah had no issue with the officers' arresting Yah Jr.; he just wished to prevent Yah Jr. from being shot. Defense counsel elaborated:

> Whether or not [Yah Jr.] was actually going to be harmed, I don't think anybody is saying here today that he was going to be harmed, but I think that when you're looking at the statute and you're looking that intent is an element of this, you have to look at all the circumstances of what was going through [Yah's] mind that day.

Defense counsel suggested, based on the timing, that the only reason Yah was cited was because he filed a complaint against Anderson. The record does not reflect that defense counsel raised to the trial court either Yah's due process rights or Yah's First Amendment right to freedom of speech.

The State emphasized that law enforcement was following standard operating procedure in effectuating the arrest and that Yah did not have a right to interfere and obstruct law enforcement from doing its job. The State also suggested that it was not a coincidence that Yah Jr. exited the back of the apartment after Yah, who exited from the front, was on his cell phone. Further, the State noted that when Yah refused to comply with the commands to drop the backpack, Yah was no longer concerned that Yah Jr. was in imminent danger of being shot. The State argued that Yah's actions in refusing to comply with law enforcement's orders demonstrated the requisite intent.

### 3. Verdict and Sentence

The trial court stated, "The issue is whether [Yah] acted with the intent to obstruct or interfere with a law enforcement officer performing an official duty." The court quoted § 20-21 as providing, "'It shall be unlawful for any person to purposefully or knowingly do any act, refuse to do any act, or to

commit an act of omission with the intent to obstruct or inter-
fere with any law enforcement officer or firefighter performing
an official duty.'"

The court relied on *State v. Ferrin*[1] for the proposition that
the proper inquiry in analyzing whether a defendant's conduct
violates § 28-906, the offense of obstructing a peace officer,
is whether a defendant's conduct, however expressed, used or
threatened to use either violence, force, physical interference,
or obstacle to intentionally obstruct, impair, or hinder a peace
officer or judge who was acting to either enforce the penal
law or preserve the peace under color of his or her official
authority. The court said that Yah argued the "evidence at trial
was insufficient to show that he intentionally used or threat-
ened to use physical interference or obstruction while the
officers were actively engaged in effectuating the arrest . . .
because [Yah] was afraid for [Yah Jr.]." The court explained
that this concern "does not negate the requirement to comply
with lawful commands of a police officer engaged in their
official duties."

The court found that Yah's conduct "equated to a series
of willful, defiant refusals to comply with the lawful com-
mands of the officers on the scene," which "created obstacle
to the officers as they were performing their official duties."
More specifically, the court found that "[a]t the same time the
officers were actively arresting and cuffing [Yah Jr.], [Yah]
began advancing toward the officers with his leashed dog
and yelling at the officers." Further, "Anderson ordered [Yah]
to get back," and "[Yah] did not comply and continued to
advance." Meanwhile, the dog "was getting agitated, jumping,
and barking."

The court found that Anderson "repeatedly yelled com-
mands to [Yah] to get back." Yah complied only after Anderson
threatened to shoot the dog if Yah did not get back. The court
further found that while Anderson was walking Yah Jr. to

---

[1] *State v. Ferrin*, 305 Neb. 762, 942 N.W.2d 404 (2020).

the police vehicle, Yah advanced toward the point of arrest and picked up Yah Jr.'s backpack. Anderson immediately commanded Yah to drop the backpack but Yah "refuse[d] and argue[d] with . . . Anderson, repeating the cycle of . . . Anderson giving commands and [Yah] refusing to follow the commands." When the dog again became agitated, Yah finally dropped the backpack.

The court concluded that the State had proved beyond a reasonable doubt that Yah violated § 20-21. Yah was convicted and ordered to pay a fine of $250 and court costs in the amount of $50.

## 4. Appeal to District Court

Yah appealed his conviction to the district court. Yah assigned to the district court that the trial court erred (1) when it found the State had proved a prima facie case of guilt for the violation of § 20-21; (2) when it applied § 28-906, the offense for obstructing a peace officer, in its finding of guilt, as opposed to § 20-21; (3) when it found that the State had proved the element of intent as set forth in § 20-21; and (4) when it found Yah guilty because the guilty verdict violated Yah's due process rights pursuant to the U.S. and Nebraska Constitutions.

In relation to the first assignment of error, in his brief on appeal to the district court, Yah pointed to his testimony that his only intention was to protect Yah Jr., not to interfere with the investigation. Yah argued that the State did not present any evidence to contradict his testimony and that the trial court did not specifically state it found either Yah or Yah Jr. not to be credible.

Yah's argument on his third assignment of error was similar. He pointed out that Anderson was "amped-up" and Yah yelled at Anderson not to shoot Yah Jr. and to put his gun down, supporting Yah's testimony that "his sole concern during his interaction that day was that [Yah Jr.] would be safe." Yah pointed out that under the Due Process Clause of the 14th

Amendment to the U.S. Constitution and under the Nebraska Constitution, the State must prove every element of an offense beyond a reasonable doubt. He claimed the State had failed to prove the requisite intent for a violation of § 20-21 because "[n]o reasonable inference could be adduced from Yah's testimony or from the other witnesses that Yah's intent was to obstruct the officers' execution of their duties."

On his second assignment of error, Yah argued that it was improper for the county court to rely on a proposition from *Ferrin* to conclude that "the emotion that . . . Yah felt in watching [Yah Jr.] be arrested did not negate the requirement to comply with lawful commands of a police officer engaged in their official duties."[2] Yah pointed out that § 20-21 has different elements from § 28-906, including the fact that § 28-906 allows for a conviction for "merely 'threatening' to use violence, physical interference or force, while no such provision appears in [§ 20-21]."

According to Yah, "[§ 20-21] does not require bystanders to comply with commands of officers, and to do so necessarily impairs the free speech rights of those not subject to warrant." Yah asserted that "[b]y citing to *State v. Ferrin*, the [c]ourt was applying the factors of the state statute in this case as opposed to the city ordinance." Yah concluded, "Therefore, to apply the law from [§] 28-906 as opposed to [§] 20-21 is clear error." Yah also pointed out that the facts relating to his interaction with law enforcement were distinct from those in *Ferrin*.

On his fourth assignment of error, Yah argued that Anderson violated Yah's due process rights not to be deprived of property, freedom, or life without due process when Anderson considered using deadly force if the situation escalated, even though Yah was not threatening Anderson with physical violence. In addition, Yah pointed out that he "has a right under the First Amendment to the U.S. Constitution to free speech"

---

[2] See *id.*

such that law enforcement should respond with restraint to verbal challenges. Yah asserted that the trial court violated Yah's First Amendment right to free speech by finding him guilty "of only speech [which] was not threatening, violent or which in any way directed officers away from the execution of their warrant."

The district court affirmed the conviction. It reasoned that the evidence showed that nothing improper was done by law enforcement to Yah Jr., that law enforcement gave Yah reasonable commands that had to be repeated before finally being heeded, and that "it is expected that a person will immediately follow the commands of a police officer."

## III. ASSIGNMENTS OF ERROR

Yah assigns that the district court erred (1) by concluding that the county court did not abuse its discretion by applying § 28-906 in finding him guilty, (2) by concluding that the county court did not abuse its discretion by finding the State had proved the element of intent as set forth in § 20-21, (3) by concluding that the county court did not abuse its discretion in finding Yah guilty, and (4) by failing to find that the guilty verdict violated Yah's due process rights.

## IV. STANDARD OF REVIEW

[1] An issue not presented to or decided on by the trial court is not an appropriate issue for consideration on appeal.[3]

[2] An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[4]

[3] In reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the

---

[3] *State v. Lee*, 304 Neb. 252, 934 N.W.2d 145 (2019).

[4] *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021).

credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[5]

## V. ANALYSIS

Yah argues the evidence was insufficient to support his conviction because there was no evidence to support the county court's finding that he acted with intent to obstruct or interfere with a law enforcement officer performing an official duty. Relatedly, Yah argues his conviction violated due process because the evidence did not support finding him guilty beyond a reasonable doubt. He also argues the county court applied the elements of a statute he was not charged with in finding him guilty. Lastly, Yah argues his conviction violates his First Amendment right to free speech and that Anderson's aggressiveness and willingness to use deadly force violated Yah's due process rights.

[4] The Nebraska Supreme Court has long held, under the "ordinance rule," that an appellate court will not take judicial notice of a municipal ordinance not in the record.[6] Because the ordinance Yah was charged with violating is not in the record, we will assume that the material allegations contained in the long-form complaint against Yah reflect the substantive content of the ordinance.[7] The complaint alleged Yah "did purposely or knowingly do any act, refuse to do any act, or commit any act of omission with the intent to obstruct or interfere with any law enforcement officer . . . performing an official duty."

---

[5] *State v. Haynie, ante* p. 371, 9 N.W.3d 915 (2024).

[6] See, e.g., *Harris v. O'Connor*, 287 Neb. 182, 842 N.W.2d 50 (2014); *State v. Hill*, 254 Neb. 460, 577 N.W.2d 259 (1998); *Vrana Paving Co. v. City of Omaha*, 220 Neb. 269, 369 N.W.2d 613 (1985); *City of Omaha Human Relations Dept. v. City Wide Rock & Exc. Co.*, 201 Neb. 405, 268 N.W.2d 98 (1978); *State v. Hohensee*, 164 Neb. 476, 82 N.W.2d 554 (1957); *Steiner v. State*, 78 Neb. 147, 110 N.W. 723 (1907).

[7] See *State v. Hill, supra* note 6. See, also, *State v. Grant*, 310 Neb. 700, 968 N.W.2d 837 (2022).

There is no merit to Yah's contention that the county court, in its fact finding, improperly relied on elements of a statute that he was not charged with. The court's order finding Yah guilty beyond a reasonable doubt quoted the language of the ordinance as set forth in the complaint. Referring to that language, the court stated the question was whether Yah "acted with the intent to obstruct or interfere with a law enforcement officer performing an official duty." We do not read the court's order as using *Ferrin* to add or change the meaning of the elements of the ordinance Yah was charged with violating.[8] The court's order plainly indicates it was relying on *Ferrin* as a similar but not completely apposite case and that it made independent findings of fact under the elements of the ordinance set forth in the complaint.

We find the evidence sufficient to support Yah's conviction and, more specifically, to support a finding that Yah intended to obstruct or interfere with a law enforcement officer performing an official duty. In reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[9] The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[10]

[5-7] "'Intent is the state of the actor's mind when the actor's conduct occurs.'"[11] Yah points to his testimony that he never intended to interfere with the arrest of Yah Jr. or the officers' investigation but was simply acting out of concern

---

[8] See *State v. Ferrin, supra* note 1.

[9] *State v. Haynie, supra* note 5.

[10] *Id.*

[11] *State v. Rokus*, 240 Neb. 613, 620, 483 N.W.2d 149, 154 (1992).

for Yah Jr.'s safety and wished to call Yah Jr.'s employer when he retrieved the backpack. Yah argues there was no evidence contradicting this testimony and the trial court did not expressly find him not to be credible. However, when an element of a crime involves existence of a defendant's mental process or other state of mind of an accused, such elements may be proved by circumstantial evidence.[12] A trier of fact may infer that the defendant intended the natural and probable consequences of the defendant's voluntary acts.[13]

There was evidence that Yah approached the officers while they were trying to place Yah Jr. in handcuffs. Yah did not comply with orders to get back. Instead, Yah was yelling at the officers and the dog was barking. After Yah Jr. was placed under arrest, Yah voluntarily picked up the backpack and did not comply with orders to put it down. Anderson testified that these actions interfered with the officers' duties pertaining to the arrest of Yah Jr. and their safety protocols. The county court, by concluding that Yah's "conduct equated to a series of willful, defiant refusals to comply with the lawful commands of the officers on the scene," inferred that Yah intended the natural and probable consequences of his voluntary acts. Viewing the evidence in the light most favorable to the prosecution, we find the evidence was sufficient to support this finding.

[8] Yah's argument concerning his First Amendment right to free speech is not properly before us because it was not presented to the trial court, and it was not specifically assigned as error on appeal. Yah's argument that Anderson violated his right to due process through Anderson's aggressiveness and willingness to use deadly force is not properly before us because it was not presented to the trial court. In the absence of plain error, when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower

---

[12] See *id.*

[13] *State v. Woolridge-Jones*, 316 Neb. 500, 5 N.W.3d 426 (2024).

court cannot commit error in resolving an issue never presented and submitted to it for disposition.[14] And it is a fundamental rule of appellate practice that an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.[15]

## VI. CONCLUSION

For the foregoing reasons, we affirm the conviction.

Affirmed.

---

[14] See, *State v. Simnick*, 279 Neb. 499, 779 N.W.2d 335 (2010); *In re Estate of Rosso*, 270 Neb. 323, 701 N.W.2d 355 (2005). See, also, e.g., *State v. Diaz*, 266 Neb. 966, 670 N.W.2d 794 (2003).

[15] *State v. $18,000*, 311 Neb. 621, 974 N.W.2d 290 (2022).