Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/06/2024 09:08 AM CST

State of Nebraska, appellee, v.
Kevin T. Kilmer, appellant.
___ N.W.3d ___

Filed December 6, 2024.    No. S-23-1012.

1. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.

2. **Criminal Law: Evidence: Appeal and Error.** The relevant question in reviewing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

3. **Criminal Law: Intent: Circumstantial Evidence.** When an element of a crime involves the existence of a defendant's mental process or other state of mind of an accused, such elements may be proved by circumstantial evidence.

4. **Criminal Law: Evidence: Intent.** The intent with which an act is committed is a mental process and may be inferred from the words and acts of the defendant and from the circumstances surrounding the incident.

5. **Criminal Law: Intent.** A trier of fact may infer that the defendant intended the natural and probable consequences of the defendant's voluntary acts.

6. **Circumstantial Evidence.** Circumstantial evidence is entitled to be treated by the trier of fact in the same manner as direct evidence.

7. **Homicide: Intent: Words and Phrases.** Deliberate malice, for purposes of first degree murder, means not suddenly and not rashly, and it requires that the defendant considered the probable consequences of his or her act before doing the act.

8. ____: ____: ____. The term "premeditated" means to have formed a design to commit an act before it was done.

9. **Homicide: Intent**. One kills with premeditated malice if, before the act causing death occurs, one has formed the intent or determined to kill the victim without legal justification.

10. **Homicide: Intent: Time.** No particular length of time for deliberation or premeditation is required, provided the intent to kill is formed before the act is committed and not simultaneously with the act that caused the death.

11. ____: ____: ____. The design or purpose to kill may be formed upon premeditation and deliberation at any moment before the homicide is committed.

12. ____: ____: ____. The surrounding circumstances relevant to whether the defendant acted with deliberate and premeditated malice are not limited to the moments immediately preceding the victim's death.

13. **Homicide: Intent.** Deliberate and premeditated malice can be found without evidence that the defendant brought a weapon to the scene of the crime.

14. **Homicide: Intent: Time.** Whether deliberate and premeditated malice exists depends on numerous facts about how and what the defendant did prior to the actual killing which show the defendant was engaged in activity directed toward the killing, that is, planning activity.

15. **Evidence: Intent.** Circumstances showing motive are relevant to intent.

16. **Homicide: Intent.** The manner or fashion in which the injury was inflicted may show a deliberate act and hence serve as evidence to support a finding of premeditation.

Appeal from the District Court for Cherry County, Mark D. Kozisek, Judge. Affirmed.

Helen O. Winston, of Nebraska Commission on Public Advocacy, for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, and Freudenberg, JJ.

Freudenberg, J.
## INTRODUCTION
The defendant was convicted by jury of first degree murder and use of a deadly weapon to commit a felony. His sole assignment of error is that the evidence was insufficient to

support his conviction of first degree murder. The defendant argues there was insufficient evidence for the jury to find beyond a reasonable doubt that he acted with deliberate and premeditated malice. We affirm.

## BACKGROUND

In September 2021, Kevin T. Kilmer was charged by information with first degree murder, a Class IA felony, and use of a deadly weapon to commit a felony, a Class II felony. The information alleged that Kilmer killed Ruth Ann Wittmuss purposely and with deliberate and premeditated malice and that he used an ax during the commission of the murder.

Following trial, the jury returned a guilty verdict on both counts, which the district court accepted. The court sentenced Kilmer to life imprisonment for first degree murder and to 10 to 14 years' imprisonment for use of a deadly weapon to commit a felony. The court ordered the sentences to be served consecutively.

Kilmer lived in Valentine, Nebraska, but at the time of Wittmuss' death, Kilmer had been staying with Wittmuss and Michael Malone, with whom Kilmer had been romantically involved. Wittmuss and Malone lived in a trailer house in Kilgore, Nebraska. In exchange for their work, the owner of the trailer house permitted Wittmuss and Malone to live in the trailer house and provided them food. The trailer house owner also gave Wittmuss her red van, which Wittmuss rarely let others drive.

Amanda Schell Heath (Schell), a friend of Kilmer's, testified that on the night of the murder, Kilmer arrived at her residence in a maroon van, wearing only shorts and black boots. As she approached Kilmer, Schell saw specks of blood on his arms, chest, face, legs, and back. Schell asked Kilmer why he had blood on him, and Kilmer told her that he "hit a lady."

Kilmer asked to take a shower, but before Schell let him, she made him elaborate on his statement. Kilmer told Schell that he hit Wittmuss in the head with an ax earlier that day.

He explained that Wittmuss was yelling, so he hit her, she paused for a second, said "Ow," and then she fell to the ground. Kilmer described to Schell seeing the membrane between Wittmuss' brain and her skull and told Schell that he put Wittmuss in a suitcase and "dumped" her on the side of a dirt road outside of Kilgore.

Kilmer explained to Schell that Wittmuss had woken him up yelling, that she yelled a lot, and that there were instances where she had struck him with a padlock tied to a string. He also indicated to Schell that Wittmuss may have threatened to tell others about his "secret" relationship with Malone. Schell testified that Kilmer was "infatuated" with Malone and that Kilmer and Malone had been romantically involved for a long time. While Kilmer was in the shower, Schell wrote down the license plate number of the van Kilmer had driven to her residence. She called law enforcement after he left.

After talking to Schell, law enforcement visited the trailer house. A law enforcement officer accompanied Kilmer inside of the trailer house, where the officer observed what he believed to be blood spatter on a wall and either brain matter or tissue in the kitchen area.

While Kilmer was outside the trailer house with law enforcement, he changed out of his black boots and put on flat lace-up shoes. Shortly after, Kilmer fled the scene, which prompted a manhunt. Kilmer was located and arrested the next day.

During the investigation, law enforcement located a suitcase in a ditch on the side of a road approximately 3 miles north of Kilgore. The suitcase contained Wittmuss' body, which appeared to have blunt force trauma to the back of the head. It also contained rags and linoleum tile that appeared to have bloodstains on them, along with a padlock attached to a cord.

The pathologist who conducted an autopsy on Wittmuss testified that she had trauma to her face, a large bruise on her back, a large laceration on the back of her head, and a fractured skull containing bone fragments. The pathologist explained

that the injuries on the back of Wittmuss' head were caused by a blunt object with sufficient size and weight to fracture the skull and that the flat end of an ax could cause such injuries.

The pathologist opined that the injuries on the back of Wittmuss' head "probably took at least two, maybe three blows." The blow to the side of her head that caused bleeding was not the same injury that caused the fracture to the back of her skull. The pathologist determined that the bruise on Wittmuss' back was caused by blunt force trauma and that the bruising on her back, face, and head were premortem. He concluded, with a reasonable degree of medical certainty, that Wittmuss' cause of death was blunt force trauma to the head.

Law enforcement investigators observed, collected, and tested evidence obtained from the trailer house and Wittmuss' van. They observed blood spatter and bodily tissue in the kitchen area of the trailer house. Law enforcement seized an ax that appeared to have blood on its blunt end and linoleum tile that matched the description of the tile found in the suitcase containing Wittmuss' body. The ax was found in the living room of the trailer house.

A floor vent in the kitchen area that appeared to have blood on and around it was tested with luminol and seized as evidence. Law enforcement observed and swabbed bloodstains on the interior and exterior of the van. They also located a bucket containing a towel that appeared bloody, floor tiles, and paper towels near a travel trailer that was located south of the trailer house. The bloody towel and floor tiles in the bucket were consistent with the ones found in the suitcase containing Wittmuss' body, and law enforcement believed the tiles in the bucket were consistent with the area from where the floor vent was seized.

A forensic scientist with the Nebraska State Patrol Crime Laboratory testified she examined swabs from the crime scene and the ax. The presence of blood was confirmed to be on the butt of the ax's head, the upper handle of the ax, and the suitcase Wittmuss was found in. The forensic scientist also

confirmed that blood was present in the trunk of Wittmuss' van and in the trailer house on a counter, wall, and doorframe in the kitchen and on a refrigerator in the hallway.

The forensic scientist testified that a female DNA profile was detected in the DNA profiles of a stain on Kilmer's left boot, the butt of the ax's head, the upper handle of the ax, the suitcase, blood in the trunk of Wittmuss' van, and blood spatter on the counter, wall, refrigerator, and doorframe in the trailer house. In comparing reference samples of Kilmer, Malone, and Wittmuss to the DNA profiles, Kilmer and Malone were excluded as contributors, and Wittmuss was included.

Evidence was presented that, on the day she died, Wittmuss told the trailer house owner that she wanted to "take [Kilmer] home." Later that day, Wittmuss called to borrow the trailer house owner's car, but she never showed up to retrieve the car keys from him.

Malone testified that he and Kilmer had a romantic relationship at one point, and he believed Kilmer was obsessed with him. A couple of weeks before Wittmuss' death, Malone introduced Wittmuss to Kilmer. Kilmer then stayed with Malone and Wittmuss in the trailer house for a couple of weeks. Wittmuss and Kilmer would take trips to a "reservation" in search of methamphetamine, which Malone, Kilmer, and Wittmuss used at the trailer house.

At first, Wittmuss and Kilmer got along well, but they started to argue after Wittmuss left Kilmer on the side of the road during one of their trips. Wittmuss alleged that Kilmer had stolen something from her. About 3 days before Wittmuss' death, Malone witnessed Wittmuss and Kilmer yelling at each other because Kilmer was wearing the padlock attached to a cord, which belonged to Wittmuss, like a necklace. Wittmuss and Kilmer were also arguing about how she left him on the side of the road.

At some point, Wittmuss and Kilmer had a physical altercation that involved Wittmuss' yelling at Kilmer to pack his belongings and leave the trailer house. Wittmuss indicated

that she was going to take Kilmer back to Valentine. During the remaining few days leading up to her death, Wittmuss and Kilmer continued to argue, and Kilmer packed his belongings while claiming that he did not steal anything.

Malone testified that either on the day of Wittmuss' death or on the night before, he woke up to Wittmuss and Kilmer continuing their argument, and Wittmuss told Malone that she had called the owner of the trailer house to borrow his car. Wittmuss and Malone then got high on methamphetamines, but Wittmuss, having control of the drugs in the house, did not give any to Kilmer that day.

Later in the day, Malone left the trailer house to go to the trailer house owner's residence. At that time, Wittmuss and Kilmer were physically and verbally arguing inside, and Wittmuss "was still telling [Kilmer] he needed to pack all of his stuff." At one point, Kilmer was standing in front of the trailer house, trying to explain to Malone that he did not steal anything and that he did not want to leave the trailer house. Malone told Kilmer that he had to go back to Valentine because Wittmuss would not lie. Malone believed that Kilmer would be leaving with Wittmuss that day to return to Valentine.

Malone testified that when he returned to the trailer house, no one was there and Wittmuss' van was not there, so he thought that Wittmuss and Kilmer had already left for Valentine. Malone returned to the trailer house owner's residence.

Thereafter, Kilmer stopped by the trailer house owner's residence while driving Wittmuss' van. Malone testified that he thought this was strange because Wittmuss would not have let anyone drive her van.

Kilmer told Malone that Wittmuss was at the trailer house. However, Wittmuss was not there when Malone visited the trailer house a short time later. Malone questioned Kilmer, who told him that Wittmuss may have gone for a walk. Shortly thereafter, law enforcement arrived.

Kilmer testified in his own defense at trial. He explained that he had a romantic relationship with Malone and that he had "liked [Malone] for a long time." He testified that, on the day of Wittmuss' death, he heard Wittmuss and Malone arguing, which he thought was unusual because he had never heard them argue before. Kilmer testified that when he went to see what was happening, he saw Malone hit Wittmuss in the back of the head with an ax at least three times—once when she was standing and two more times after she had fallen to the ground. It occurred in the kitchen area and lasted only a couple of minutes. Kilmer testified that, upon Malone's request, he cleaned the blood with towels and a cleaning product, and Kilmer further admitted that he had removed some floor tiles because blood had seeped under them. Kilmer put some of the tiles and towels inside a bucket and left it near the travel trailer, and he also put some of the towels in the suitcase that Wittmuss was placed in.

Kilmer testified that after Malone left the trailer house, and without Malone's instruction, he hid the ax in the living room, loaded the suitcase into Wittmuss' van, drove it north, and left the suitcase there. Kilmer drove back to the trailer house in Kilgore because he did not have "anywhere else to go" and would not return to Valentine because he had been kicked out of his father's house just a week earlier. Kilmer retrieved clothes and toiletries from the trailer house and then drove to Schell's residence to shower so that he could rinse Wittmuss' blood off of himself. Kilmer admitted to telling Schell that he had cleaned the trailer house and left the suitcase on the side of the road. Kilmer also admitted that he had lied repeatedly to law enforcement.

## ASSIGNMENT OF ERROR

Kilmer assigns there was insufficient evidence to support the jury's guilty verdict for first degree murder in violation of Neb. Rev. Stat. § 28-303 (Cum. Supp. 2022) because a rational trier of fact could not find all elements of the charged offense beyond a reasonable doubt.

## STANDARD OF REVIEW

[1,2] In reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[1] The relevant question in reviewing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2]

## ANALYSIS

Kilmer argues there was insufficient evidence of his intent and premeditation for the jury to find him guilty beyond a reasonable doubt of first degree murder in violation of § 28-303. Section 28-303 provides, in pertinent part: "A person commits murder in the first degree if he or she kills another person (1) purposely and with deliberate and premeditated malice . . . ." The three elements the State must prove beyond a reasonable doubt to obtain a conviction for first degree murder are as follows: The defendant (1) killed another person, (2) did so purposely, and (3) did so with deliberate and premeditated malice.[3]

Kilmer does not challenge the jury's finding that he killed Wittmuss and did so purposely. Kilmer asserts the State's evidence was insufficient to prove that he killed Wittmuss with deliberate and premeditated malice. We disagree.

[3-6] As previously mentioned, our standard of review is the same for evidence that is direct, circumstantial, or a combination thereof: We do not resolve conflicts in the evidence,

---

[1] *State v. Haynie*, 317 Neb. 371, 9 N.W.3d 915 (2024).

[2] See *id.*

[3] *State v. Cotton*, 299 Neb. 650, 910 N.W.2d 102 (2018), *disapproved on other grounds, State v. Avina-Murillo*, 301 Neb. 185, 917 N.W.2d 865 (2018); *State v. Escamilla*, 291 Neb. 181, 864 N.W.2d 376 (2015).

pass on the credibility of witnesses, or reweigh the evidence, and such matters are for the finder of fact.[4] When an element of a crime involves the existence of a defendant's mental process or other state of mind of an accused, such elements may be proved by circumstantial evidence.[5] This includes deliberation and premeditation.[6] The intent with which an act is committed is a mental process and may be inferred from the words and acts of the defendant and from the circumstances surrounding the incident.[7] Also, a trier of fact may infer that the defendant intended the natural and probable consequences of the defendant's voluntary acts.[8] Circumstantial evidence is entitled to be treated by the trier of fact in the same manner as direct evidence.[9]

[7-11] Deliberate malice, for purposes of first degree murder, means not suddenly and not rashly, and it requires that the defendant considered the probable consequences of his or her act before doing the act.[10] The term "premeditated" means to have formed a design to commit an act before it was done.[11] One kills with premeditated malice if, before the act causing death occurs, one has formed the intent or determined to kill the victim without legal justification.[12] No particular length of time for deliberation or premeditation is required, provided the intent to kill is formed before the act

---

[4] See *State v. Haynie, supra* note 1.

[5] *State v. Yah*, 317 Neb. 730, 11 N.W.3d 632 (2024).

[6] See *State v. Beers*, 201 Neb. 714, 271 N.W.2d 842 (1978).

[7] *State v. Barnes*, 317 Neb. 517, 10 N.W.3d 716 (2024); *State v. Miranda*, 313 Neb. 358, 984 N.W.2d 261 (2023); *State v. Golyar*, 301 Neb. 488, 919 N.W.2d 133 (2018).

[8] *State v. Yah, supra* note 5.

[9] *State v. Rush*, 317 Neb. 622, 11 N.W.3d 394 (2024).

[10] See, *State v. Barnes, supra* note 7; *State v. Miranda, supra* note 7; *State v. Golyar, supra* note 7.

[11] *Id.*

[12] *State v. Miranda, supra* note 7; *State v. Golyar, supra* note 7.

is committed and not simultaneously with the act that caused the death.[13] In *State v. Cotton*,[14] we stated that "[t]he time required to establish premeditation may be of the shortest possible duration and may be so short that it is instantaneous . . . ." We have also held that the design or purpose to kill may be formed upon premeditation and deliberation at any moment before the homicide is committed.[15]

In asserting that the evidence was insufficient, Kilmer relies on cases where we found deliberate and premeditated malice was supported by defendants' retreating from their victims before returning with weapons to kill them[16] or arriving at the scene of the crime with a weapon in hand.[17] Kilmer stresses that the evidence in his case did not show that he brought the ax into the trailer house or even that he retrieved it from another room. He also points out that the jury was not presented with evidence of his statements or behavior "immediately preceding"[18] Wittmuss' death.

[12-16] Kilmer views the circumstances relevant to his state of mind too narrowly. The surrounding circumstances relevant to whether the defendant acted with deliberate and premeditated malice are not limited to the moments immediately preceding the victim's death. Furthermore, deliberate and premeditated malice can be found without evidence that the defendant brought a weapon to the scene of the crime. Whether deliberate and premeditated malice exists depends on numerous facts about how and what the defendant did

---

[13] *State v. Barnes, supra* note 7. See, *State v. Miranda, supra* note 7; *State v. Golyar, supra* note 7.

[14] *State v. Cotton, supra* note 3, 299 Neb. at 670, 910 N.W.2d at 126.

[15] *State v. Barnes, supra* note 7; *State v. Miranda, supra* note 7; *State v. Golyar, supra* note 7.

[16] See, *State v. Miranda, supra* note 7; *State v. Braesch*, 292 Neb. 930, 874 N.W.2d 874 (2016).

[17] See, *State v. Escamilla, supra* note 3; *State v. McLemore*, 261 Neb. 452, 623 N.W.2d 315 (2001).

[18] Brief for appellant at 13.

prior to the actual killing which show the defendant was engaged in activity directed toward the killing, that is, planning activity.[19] Circumstances showing motive are relevant to intent.[20] The manner or fashion in which the injury was inflicted may show a deliberate act and hence serve as evidence to support a finding of premeditation.[21] This includes the nature and number of the victim's wounds.[22]

Numerous surrounding circumstances demonstrated at trial supported the jury's finding that Kilmer acted with deliberate and premeditated malice when he killed Wittmuss.

Circumstantial evidence showed a motive for the killing. There was evidence of increasing animosity between Wittmuss and Kilmer, who continuously fought with each other during the 3 days leading up to Wittmuss' death. On the day she died, Wittmuss did not let Kilmer have any drugs, and there was a physical and verbal altercation, wherein Wittmuss continued to tell Kilmer to pack his belongings.

The evidence suggested that Kilmer knew Wittmuss was planning on driving him back to Valentine on the day of her death. There was evidence that Kilmer did not want to leave. He did not have "anywhere else to go," because he had been kicked out of his father's house a week before. Also, Kilmer was "infatuated" with Malone, whom Kilmer presumably wanted to keep staying with at the trailer house. The jury could have inferred that Kilmer believed he could continue to stay with Malone at the trailer house if Wittmuss were dead. There was also circumstantial evidence that Kilmer wished to prevent Wittmuss from carrying out her threat to tell others about Kilmer's "secret" relationship with Malone and that Kilmer was angry with Wittmuss because she had turned Malone against him.

---

[19] See, *State v. Cotton, supra* note 3; *State v. Escamilla, supra* note 3.

[20] See, *State v. Barnes, supra* note 7; *State v. Beers, supra* note 6.

[21] See *State v. Escamilla, supra* note 3.

[22] See *id.*

The manner in which Kilmer inflicted Wittmuss' injuries also supported the jury's finding of deliberate and premeditated malice. Kilmer struck Wittmuss in the back of the head with the ax at least three times over a couple of minutes, with two blows occurring after she had already fallen to the ground. The multiple blows from the ax were significant enough to fracture Wittmuss' skull and leave blood spatter and brain matter in the trailer house. Kilmer told Schell that he saw the membrane between Wittmuss' brain and her skull. The violent and repetitive nature of Wittmuss' wounds supported the inferences that Kilmer knew the probable consequence of his actions would be Wittmuss' death and that he formed the intent to kill her without legal justification.

Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that Kilmer acted with deliberate and premeditated malice. We find no merit to Kilmer's assignment of error challenging the sufficiency of the evidence. We affirm his convictions and sentences.

## CONCLUSION

For the foregoing reasons, we affirm Kilmer's convictions and sentences.

AFFIRMED.

MILLER-LERMAN, J., concurring

Step instruction No. 6 was given in this case. It reads as follows:

**INSTRUCTION NO. 6:** CRIMES CHARGED; ELEMENTS; EFFECT OF FINDINGS:

**COUNT 1: MURDER IN THE FIRST DEGREE:**

A. GREATER AND INCLUDED CRIMES: Depending on the evidence, you may return one of several possible verdicts to this count:

(1) Guilty of murder in the first degree;

(2) Guilty of murder in the second degree;

(3) Guilty of manslaughter; or

(4) Not guilty.

B. ELEMENTS:

(1) <u>MURDER IN THE FIRST DEGREE</u>: The elements which the State must prove beyond a reasonable doubt in order to convict the defendant of murder in the first degree are that:

(a) Kevin T. Kilmer killed Ruth Ann Wittmuss a/k/a Ruth Ann Johnson;

(b) He did so purposely;

(c) He did so with deliberate and premeditated malice; and

(d) He did so in Cherry County, Nebraska on or about August 23, 2021.

(2) <u>MURDER IN THE SECOND DEGREE</u>: The elements which the State must prove beyond a reasonable doubt in order to convict the defendant of murder in the second degree are that:

(a) Kevin T. Kilmer caused the death [of] Ruth Ann Wittmuss a/k/a Ruth Ann Johnson;

(b) He did so intentionally, but without premeditation;

(c) He did so without the provocation of a sudden quarrel; and

(d) He did so in Cherry County, Nebraska on or about August 23, 2021.

(3) <u>MANSLAUGHTER</u>: The elements which the State must prove beyond a reasonable doubt in order to convict the defendant of manslaughter are that:

(a) Kevin T. Kilmer killed Ruth Ann Wittmuss a/k/a Ruth Ann Johnson; and

(b) He did so intentionally without malice upon a sudden quarrel; and

(c) He did so in Cherry County, Nebraska on or about August 23, 2021.

[C]. EFFECT OF FINDINGS: With respect to Count 1, you must consider, in the following order, the crimes of

Murder in the First Degree, Murder in the Second Degree and Manslaughter.

For the crime of Murder in the First Degree you must decide whether the State proved each and every element beyond a reasonable doubt. If the State did so prove each element of Murder in the First Degree, then you must find the defendant guilty of Murder in the First Degree, cease your deliberations on this count and proceed to deliberations on Count 2. If however, you find that the State failed to prove each and every element of Murder in the First Degree, then you must proceed to consideration of the crime of Murder in the Second Degree.

For the crime of Murder in the Second Degree you must decide whether the State proved each and every element beyond a reasonable doubt. If the State did so prove each element of Murder in the Second Degree, then you must find the defendant guilty of Murder in the Second Degree, cease your deliberations on this count and proceed to deliberations on Count 2. If however, you find that the State failed to prove each and every element of Murder in the Second Degree, then you must proceed to consideration of the crime of Manslaughter.

For the crime of Manslaughter you must decide whether the State proved each and every element beyond a reasonable doubt. If the State did so prove each element of Manslaughter, then you must find the defendant guilty of Manslaughter, cease your deliberations on this count and proceed to deliberations on Count 2. If however, you find that the State failed to prove each and every element of Manslaughter, then you must find the defendant not guilty on Count 1 and cease your deliberations.

When you have reached a verdict record your verdict on the Verdict Form.

No assignment of error complains about this instruction. I believe the due process implications of the step instruction in

a first degree murder case warrant revisiting, as elucidated in the dissent in *State v. Hinrichsen*, 292 Neb. 611, 877 N.W.2d 211 (2016) (Connolly, J., dissenting; Miller-Lerman, J., joins). See, also, *State v. Esch*, 315 Neb. 482, 997 N.W.2d 569 (2023) (Miller-Lerman, J., concurring).